(No. 37987.—

FRED J. SCHREIBER *et al.,* Appellants, *vs.* COUNTY BOARD OF SCHOOL TRUSTEES OF PEORIA COUNTY, ILLINOIS *et al.,* Appellees.

*Opinion filed May 20, 1964.*

Max J. Lipkin, of Peoria, for appellants.

C. B. Ullrick, of Peoria, for appellees.

Mr. Justice Schaefer delivered the opinion of the court:

This case involves the constitutionality of section 7—2.1 of the School Code, which deals with changes in the boundaries of special charter school districts. (Ill. Rev. Stat. 1963, chap. 122, par. 7—2.1). Prior to the adoption of this section in 1961, the annexation or disconnection of territory to or from a city, village or town in which a special charter school district existed, effected an annexation or disconnection of the territory not only as to the municipality, but as to the special charter school district as well. The annexation or disconnection was automatic, and no method was provided for appraising the effect that it might have upon existing patterns of school administration, upon the pupils living in the annexed territory or upon the owners of property in that area. (Ill. Rev. Stat. 1959, chap. 122, par. 32—31.) Section 7—2.1 provides for an administrative examination and determination of the propriety of such an annexation. Under that section annexation to the special charter school district automatically follows the annexation of territory to the municipality unless within 60 days from the date of annexation, administrative proceedings are instituted by a school board of school trustees, or by legal voters or owners of property within the territory.

The City of Peoria lies within the City of Peoria Special Charter School District, and the plaintiffs are landowners whose properties were annexed to the City of Peoria under the provisions of the Illinois Municipal Code. Within sixty days of the annexation, Community High School District No. 312 of Peoria County, one of the school boards having jurisdiction over the property prior to its annexation to the city, filed a petition with the Superintendent of Public Instruction alleging that the proposed change of school district boundaries would not be "for the best interests of the schools of the area and the educational welfare of the pupils." The petition set forth the facts upon which this allegation was based. Section 7—2.1 provides that when such a petition is filed the "Superintendent of

Public Instruction shall set a time for hearing said petition * * * and shall direct the petitioners to advertise notice of the time and place of such hearing at least once in a newspaper having a general circulation in the area. The county board of school trustees shall cause a further notice of such hearing to be sent to all school boards (including the board of the special charter district) and school trustees having jurisdiction over the territory affected by the petition." A hearing officer is appointed to conduct the hearing at which all interested persons may appear and give evidence. "Members of the special charter school board and county board of school trustees shall attend such hearing or designate one or more of their respective members to attend such hearing," and a copy of the transcript of the hearing is to be transmitted to the board of the special charter district and the county board of school trustees. The statute continues: "The respective boards [the special charter board and the county board of school trustees] shall sit separately and if, after weighing the evidence, as presented at the hearing, either or both of said boards find that the public interest and the welfare of the districts and persons involved indicate the desirability of or need therefor, the boards or either of them shall enter an order setting aside the annexation or disconnection or nullifying the effect thereof with respect to all or any part of the territory described in the petition. The boards may also in their separate discretions delay or suspend for a stated period, the effect of the proposed annexation or disconnection with respect to any or all of the territory affected. The order shall affect only the proposed change of school district boundaries, and shall not affect the annexation or disconnection of the territory to or from any municipality."

Plaintiffs appeared at the hearing and their objections to the applicability and constitutionality of section 7—2.1 were heard. At the conclusion of the hearing the Board of Education of the City of Peoria, which governs the Special

Charter District, entered an order determining that annexation of plaintiffs' properties to the special charter district should not be prevented. The County Board of School Trustees of Peoria County, however, entered an order setting aside the annexation to the special charter district. Plaintiffs then instituted an administrative review proceeding in the circuit court. That court rejected the contention of the plaintiffs that section 7—2.1 is unconstitutional and affirmed the administrative determination. The plaintiffs have appealed.

The main thrust of the plaintiffs' attack upon the validity of section 7—2.1 is directed at portions of the section that are not here involved. The section authorizes either school board to enter an order setting aside annexation as to "all or any part of the territory described in the petition." Either board may also "delay or suspend for a stated period, the effect of the proposed annexation or disconnection with respect to any or all of the territory affected" and when both boards act concurrently, they may determine that the prayer of the petition be "changed or modified" and enter an order accordingly. Plaintiffs contend that these delegated powers are unconstitutionally broad. They are in no position to raise this objection, however, since none of the challenged powers was in fact exercised. (See *People ex rel. Rusch* v. *White,* 334 Ill. 465, 487.) Instead, the action of a single board applied to all of the territory described in the petition and prevented its annexation to the special charter district. The plaintiffs thus lack standing to attack the provisions at which their challenge is primarily directed. "This court will not determine the constitutionality of the provisions of an act which do not affect the parties to the cause under consideraion, or where the party urging the invalidity of such provisions is not in any way aggrieved by their operation." *Liberty Nat. Bank of Chicago* v. *Collins,* 388 Ill. 549, 559; *Chicago Park District* v. *Canfield,* 370 Ill. 447.

Plaintiffs also contend that section 7—2.1 unconstitutionally delegates to the school boards authority to control school district boundaries without prescribing sufficiently specific standards, in violation of Article III of the Constitution. The statute provides that either board shall enter an order setting aside the annexation if it finds that "the public interest and the welfare of the districts and persons involved indicate the desirability of or need therefor." These standards are broad, but they are to operate only when there has been an automatic and arbitrary dislocation of the existing scheme of school administration stemming from the annexation of territory to a city or village. Apart from a statutory check such as section 7—2.1 provides, such an annexation would carry the annexed territory into the special charter district without regard to the welfare of the school districts or the people who would be affected by the automatic annexation.

It is our opinion that the statute does not contravene Article III of the state constitution. "The constitutional doctrine of separation of powers was not intended to confine the legislature to the alternatives of complete inaction or the imposition or rigidly inflexible laws which would distort rather than promote its objective. When it is necessary, the legislature may commit to others the responsibility for the accomplishment of the details of its expressed purpose. The scope of permissible delegation must be measured in terms of the complexity and diversity of the conditions which will be encountered in the enforcement of the statute." *Department of Public Works and Buildings* v. *Lanter,* 413 Ill. 581, 589-90.

In this case the boards are to determine whether the automatic change in boundaries is consistent with "the public interest and the welfare of the districts and persons involved." This determination does not differ in substance from that which was sustained in *School District No. 79*

v. *County Board of School Trustees,* 4 Ill.2d 533, in which the county board of school trustees was to "determine whether it is to the best interests of the schools of the area and the educational welfare of the pupils that such change in boundaries be granted." A number of variable factors must enter into such a determination. It is not necessary that each relevant factor be enumerated in the statute. The broad guidelines embodied in section 7—2.1 are as specific as they need to be, consistent with an effective legislative plan for the changing of school district boundaries. *Cf. Hepner* v. *County Board of School Trustees,* 8 Ill.2d 235.

Plaintiffs also contend that the statute violates the due process clause of the Illinois Constitution. They assert that it does not require that owners of the property involved be made parties to the statutory proceedings or be given notice of them. This assertion is based upon the erroneous assumption that individuals have a property interest in the location of school district boundaries. In *Pritchett* v. *County Board of School Trustees,* 5 Ill.2d 356, we considered and rejected a similar contention. And earlier in *People* v. *Deatherage,* 401 Ill. 25, 31-32, the court said: "With or without the consent of the inhabitants of a school district, over their protests, even without notice or hearing, the State may take the school facilities in the district  *  *  * and vest them in other districts or agencies.  *  *  * The area of the district may be contracted or expanded, it may be divided, united in whole or in part with another district, and the district may be abolished. All this at the will of the legislature."

It is also insisted that section 7—2.1 is so vague and indefinite as to violate due process, and plaintiffs pose a number of hypothetical questions as to the meaning of certain provisions of the statute. None of these provisions are involved in this case, however, and it is therefore not

necessary to interpret them. The provisions that are applicable to this case are not inconsistent, vague or indefinite. Plaintiffs also argue that section 7—2.1 creates a special classification which denies them equal protection of the law because it specifies procedures for annexation and disconnection which are different from those applicable to non-special charter school districts. But special charter districts obviously differ from school districts organized under the provisions of the School Code, and the legislature may validly provide for different annexation and disconnection requirements as to them.

Plaintiffs also contend that the statute violates section 18 of article II relating to freedom of elections. They state that under the provisions of the School Code and the special charter, persons residing within the special charter district do not have the right to vote for members of the County Board of School Trustees, which board disapproved the annexation of plaintiffs' property to the special charter district. No authority is cited for the surprising proposition that where action by two different school boards is required, interested parties must have been able to vote for the members of both boards. And in any event, the plaintiffs themselves were able to vote for members of the County Board of School Trustees, and no one else is complaining. Plaintiffs also suggest that section 7—2.1 violates section 22 of article IV which prohibits special laws relating to "the management of common schools." It is sufficient to say that statutes pertaining solely to the changing of school district boundaries do not come within the purview of this constitutional provision. *People ex rel. Taylor* v. *Camargo Community Consolidated School Dist.* 313 Ill. 321; *People ex rel. Coen* v. *Henry,* 301 Ill. 51; *Speight* v. *People ex rel. County Collector,* 87 Ill. 595.

Other arguments are advanced. It is said that section 7—2.1 does not apply to the Peoria Special Charter School District because it does not specifically state that it applies

to that particular district as is allegedly required by the terms of the special charter. The circuit court correctly held, however, that the statute is applicable to the Peoria Special School District since by its terms it applies to all special charter districts. It is urged that section 7—2.1 violates Section 13 of Article IV of the Constitution because it modifies section 32—6 of the School Code without setting out the latter section at length. When section 7—2.1 was added to the Code, section 32—6 provided among other things, that annexation of territory to a city where a special charter school district exists constituted annexation to the special charter district. The bill that enacted section 7—2.1 did not expressly amend section 32—6. The effect of section 7—2.1 however was to limit the applicability of section 32—6 to those cases in which no petition contesting annexation to a special charter district is filed within sixty days of the annexation of property to the city or village. Such an amendment by implication does not violate Section 13 of Article IV. See *Starck* v. *Chicago and North Western Railway Co.* 4 Ill.2d 611; *People* v. *Deatherage,* 401 Ill. 25, 42.

Plaintiffs' final contention is that the re-enactment of section 32—6 in 1963, subsequent to the enactment of section 7—2.1 in 1961, effected a repeal by implication of section 7—2.1. The contention is unsound in fact, for section 7—2.1 was also amended in 1963 by a bill that became effective after the amendment to section 32—6. (Laws of 1963, pp. 3042-46.) More important, the contention is unsound in law. What was said in *People ex rel. Brenza* v. *Fleetwood,* 413 Ill. 530, 548, is applicable here: "In the absence of legislative intent to the contrary, and where the two acts are not so inconsistent that both cannot stand and be given effect, a later law which is merely a re-enactment of a former law does not repeal an intermediate act which has qualified or limited the first one, but the intermediate act will be deemed to remain in force and to qualify or

modify the new act in the same manner as it did the first."

The judgment of the circuit court of Peoria County is affirmed.

*Judgment affirmed.*