(No. 44895.—

(No. 44937.—

S. BLOOM, INC., *et al.*, Appellants, v. MARSHALL KOR-
SHAK, City Collector, Appellee.—HELEN RYAN,
Appellant, v. MARSHALL KORSHAK *et al.*, Appellees.

*Opinion filed May 22, 1972.—Rehearing denied June 23, 1972.*

DAVID SILBERT and EUGENE T. SHERMAN, both
of Chicago, for appellant Helen Ryan.

COHON, RAIZES & REGAL, of Chicago (MAURICE P. RAIZES, of counsel), for appellants S. BLOOM, INC., CIGARETTE SERVICE CO., and BEATRICE WOLPE.

RICHARD L. CURRY, Corporation Counsel, of Chicago (WILLIAM R. QUINLAN and GAYLE F. HAGLUND, Assistant Corporation Counsel, of counsel), for appellees.

MR. JUSTICE WARD delivered the opinion of the court:

These consolidated appeals to this court concern challenges to the constitutionality of the Chicago cigarette tax ordinance which was enacted by the city council of the city of Chicago on December 10, 1971, under the "home rule" authority conferred by the constitution of Illinois of 1970 (Ill. Const., art. VII, sec. 6). The challenges were asserted in class actions brought in the circuit court of Cook County, which sought declaratory judgments and injunctive relief.

The appeal in No. 44895 stems from the action brought against Marshall Korshak, city collector of the city of Chicago, by S. Bloom, Inc. (in behalf of persons in the business of selling cigarettes to persons for resale in the city of Chicago), Cigarette Service Co. (in behalf of persons selling cigarettes in the city of Chicago to a purchaser for use and not for resale), and Beatrice Wolpe (in behalf of all persons who purchase cigarettes in the city of Chicago). Excepting one section, the court held the ordinance to be constitutional. Section 178.1–4(b) was judged invalid on the ground that it violated the equal-protection assurances of the United States and Illinois constitutions, and because it represented an attempt to delegate legislative authority unlawfully. Defendant Korshak has cross-appealed from this judgment of unconstitutionality.

The appeal in No. 44937 derives from an action

brought against Marshall Korshak, city collector of the city of Chicago, and Joseph Bertrand, city treasurer of the city of Chicago, by Helen Ryan, in behalf of all persons who purchased cigarettes in the city of Chicago. The judge who had ruled in the S. Bloom, Inc. case, was assigned the Ryan complaint for declaratory judgment and, noting that a notice of appeal had been filed by the plaintiffs in the Bloom matter after his ruling there, he dismissed the Ryan complaint. In January, 1972, this court ordered that the revenues received by the city of Chicago under the ordinance were to be segregated and directed to a special fund pending the disposition of these appeals. The appeals in Bloom and Ryan have been consolidated, as they both concern constitutional objections to the validity of the ordinance.

Ryan, whose contentions we shall consider first, claims that as the General Assembly did not authorize the ordinance, the city council of Chicago was without power to enact it. Section 6 of article VII of the constitution of Illinois of 1970 (Powers of Home Rule Units) declares in part:

"(a) A County which has a chief executive officer elected by the electors of the county and any municipality which has a population of more than 25,000 are home rule units. Other municipalities may elect by referendum to become home rule units. Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt.

\* \* \*

(e) A home rule unit shall have only the power that the General Assembly may provide by law (1) to punish by imprisonment for more than six months or (2) to license for revenue or impose taxes upon or measured by income or earnings or upon occupations.

\* \* \*

(g) The General Assembly by a law approved by the vote of three-fifths of the members elected to each house may deny or limit the power to tax and any other power or

function of a home rule unit not exercised or performed by the State other than a power or function specified in subsection (1) of this section.

* * *

(m) Powers and functions of home rule units shall be construed liberally."

There is no contention that under the constitution the city of Chicago is not a home rule unit nor that the General Assembly has limited the power of the city to tax under 6(g). But Ryan argues that section 6(e) must be interpreted as excepting the power to impose any privilege or nonproperty taxes from the general grant of authority given home rule units under 6(a). The contention cannot be sustained. The powers of home rule units are to be liberally construed (section 6(m)), and it would be unreascnable to attempt to read limitations into section 6(e) beyond taxes which are "upon or measured by income or earnings or upon occupations" and thus contradict the broad authority given home rule units to tax under 6(a). That no such unreasonable interpretation should be given 6(e) is evidenced by Local Government Committee Report, Illinois Constitutional Convention 1969-70, pp. 81-82. The report, in discussing the revenue provisions, cites sales and use taxes on cigarettes and hotel rooms as examples of local taxes empowered under the article.

Alternatively, Ryan contends that if the restrictions of section 6(e) are limited to taxes on income, earnings or occupation, the section is invalid under the due-process and equal-protection provisions of the United States and Illinois constitutions. It is said that the section is "unreasonable and arbitrary" because it singles out one class of nonproperty or privilege taxes and requires prior legislative approval for their use by home rule units, while other nonproperty or privilege taxes can be imposed by home rule units without prior approval by the General Assembly. The argument is based on Ryan's assumption that under the constitution of 1970 there is a mandatory

and restricted classification of taxes into property and nonproperty categories. This is incorrect. The Revenue and Finance Committee of the Illinois Constitutional Convention, 1969-70, in its report to the convention, noted that the revenue article had been drawn to avoid the restrictions of the prior article. The report declared in part: "It [new article] permits the levy of property, sales, use, franchise, privilege, income, excise, inheritance, gift, severance and all other kinds of taxes."

Article IX of the constitution of 1970 states: "The General Assembly has the exclusive power to raise revenue by law except as limited or otherwise provided in this Constitution. The power of taxation shall not be surrendered, suspended, or contracted away." Not inconsistently with this, section 6 of article VII confers the power to tax upon home rule units, save as it is withheld by section 6(e) and may be denied under section 6(g).

The limitations appearing in 6(e) cannot be said to be arbitrary and unreasonable nor is there anything to suggest a nonuniform application.

Ryan claims, too, that section 6(e) is contrary to section 2 of article IX, which provides: "In any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly. Exemptions, deductions, credits, refunds and other allowances shall be reasonable." It is said that this section requires that there be no unreasonable classification of non-property taxes and that the classification in section 6(e) of article VII is an unreasonable one. The contention does not persuade. Section 2 of article IX requires that the objects and subjects of nonproperty taxes be reasonably classified. It does not speak of the classification of taxes.

In this and in the preceding point, Ryan seems to claim that types of taxes are being treated unequally. Of course, due process and equal protection are concepts of rights of persons.

The first and principal contention of the plaintiffs, S. Bloom, Inc., Cigarette Service Co., and Beatrice Wolpe, whom we shall hereafter refer to as Bloom, is that the tax imposed by the ordinance is an occupation tax and therefore beyond the powers of the city of Chicago under section 6(e) of article VII of the constitution of Illinois, because there has been no grant of authority by the General Assembly to impose an occupation tax. To support the assertion that the ordinance provides for an occupation tax, Bloom argues that the legal incidence of the tax falls upon either the wholesaler or the retailer. This, it says, is evidenced by the circumstances that section 178.1—2(b) of the ordinance requires wholesale tobacco dealers to purchase tax stamps from the city collector and to cancel the stamps prior to any delivery to retail tobacco dealers in the city of Chicago; that section 178.1—2(d) makes it unlawful for any retailer of tobacco to purchase cigarettes which do not bear a cancelled tax stamp and provides that possession of cigarettes not bearing the stamp creates a presumption of violation of the ordinance; that section 178.1—5(b) requires retailers to file quarterly reports and that sections 178.1—7(a) and (b) require wholesalers to fill out special invoices and file quarterly reports. Bloom points out, too, that the ordinance establishes an alternative method for the collection of the tax, which requires wholesalers to prepare monthly tax returns covering sales to retailers in Chicago and for the wholesalers to remit the moneys due to the city. In further support of the thesis that the incidence of the tax is on the wholesaler or retailer it is argued that the ordinance provides penalties only for wholesalers and retailers of cigarettes. Anticipating an argument by the defendant that wholesalers under the ordinance are to serve as collection agents for the tax, Bloom contends that the ordinance does not provide such an agency. Thus, the argument is, since the legal incidence of the tax is on the wholesaler or retailer, the tax is an occupation tax and, as the General

Assembly has not authorized the imposition of such a tax, the ordinance is in violation of section 6(e) of article VII of the constitution of 1970.

We consider that the ordinance places the incidence of the tax on the consumer of cigarettes. Section 178.1–2(a) provides: "A tax at the rate of five cents per each twenty cigarettes or fraction thereof is hereby imposed upon all cigarettes possessed for sale and upon the use of all cigarettes within the City of Chicago, the ultimate incidence of and liability for payment of said tax to be borne by the consumer of said cigarettes. The tax herein levied shall be in addition to any and all other taxes."

Thus, the city council declared explicitly its intention that the incidence of the tax was to be on the consumer. Too, section 178.1–2(c) states: "Any wholesale tobacco dealer who shall pay the tax levied by this chapter to the City Collector shall collect the tax from any retail tobacco dealer to whom the sale of said cigarettes is made; and any retail tobacco dealer shall, in turn, then collect the tax from the purchaser of said cigarettes. The tax shall be paid to the person required to collect it as trustee for and on account of the City of Chicago."

The section obviously, and contrary to Bloom's contention, establishes wholesalers and retailers as collection agents for the tax and calls for the passing on of the tax to the consumer. In *Heyman v. Mahin, 49 Ill.2d 284, 288,* where the appellant had contended that the Illinois Cigarette Tax Act imposed an occupation tax upon distributors of cigarettes, we noted: "Since the statute specifically requires that the distributor pass the tax on to the retailer, no incidence of the tax falls upon the distributor ***." In *Agricultural National Bank v. Tax Commission, 392 U.S. 339, 347, 20 L.Ed.2d 1138, 1144, 88 S.Ct. 2173,* the Supreme Court, in considering upon whom the incidence of a Massachussetts sales and use tax fell, observed: "It would appear to be indisputable that a sales tax which by its terms must be passed on to the

purchaser imposes the legal incidence of the tax upon the purchaser." In *Heyman* we judged, too, that the distributors were serving as collection agents for the State. That this is not an uncommon nor improper legislative design was illustrated in *Monamotor Oil Co. v. Johnson, 292 U.S. 86, 93, 78 L.Ed. 1141, 1147.* There the Supreme Court said: "Instead of collecting the tax from the user through its own officers, the State makes the distributor its agent for that purpose. This is a common and entirely lawful arrangement." Also, *cf. Pierce Oil Corp. v. Hopkins, 264 U.S. 137, 68 L.Ed. 593, 44 S.Ct. 251; International Harvester Co. v. Wisconsin Dept. of Taxation, 322 U.S. 435, 88 L.Ed. 1373, 64 S.Ct. 1060; People v. Werner, 364 Ill. 594; People v. Kopman, 358 Ill. 479.*

Where the economic burden of a tax may fall is not a circumstance affecting the question where its legal incidence rests. In *First National Bank of Maywood v. Jones, 48 Ill.2d 284,* we noted that the fact that the consumer there bore the economic burden of the tax was not relevant to the question where the incidence of the tax rested. We said, too, in *National Bank of Hyde Park v. Isaacs, 27 Ill.2d 205, 207:* "The retailers' occupation tax is levied upon the seller, and the custom of passing the burden to the buyer by means of a price increase does not alter its nature. It is the legal incidence of the tax that controls. [Citations.] "

That the ordinance provides for penalties to be imposed on wholesalers or retailers is not of significance in determining where the incidence of the tax rests. These are but provisions to insure the integrity of the collection procedures and are not novel. See *People v. Kopman, 358 Ill. 479.*

A second contention made by Bloom is that the ordinance is so ambiguous, vague, indefinite and uncertain, that it offends the due-process protections of the constitution of the United States and of Illinois. This contention is based on the language of section 178.1—2(a) of the

ordinance which declares that the tax is imposed upon cigarettes "possessed for sale and upon the use of all cigarettes within the City of Chicago" and on the language in section 178.1—9(b) which refers to tax returns to be made by every wholesaler "who sells cigarettes for consumption in the City of Chicago." It considers, too, the reference in section 178.1—9(b) to "taxable sales made by said wholesale tobacco dealer in the City of Chicago." Referring to section 178.1—2(a), Bloom isolates the words "possessed for sale" and says that this language suggests an occupation tax. And then Bloom says that "upon the use," which is also in section 178.1—2(a), suggests a use tax. The contradicting language, it argues, makes the ordinance unconstitutionally vague and uncertain. As to section 178.1—9(b), Bloom contends that the reference to wholesalers selling cigarettes for consumption in the city of Chicago makes the ordinance uncertain, because wholesalers do not sell cigarettes for consumption; it is retailers who sell cigarettes for consumption. Too, Bloom says that the reference in the section to "taxable sales" made by wholesalers is confusing, because wholesalers do not sell to consumers. The language "taxable sales" thus, indicates the tax to be an occupation tax.

This court said in *People ex rel. Duffy v. Hurley, 402 Ill. 562, 567:* "Statutes which are so incomplete, vague, indefinite and uncertain that men of ordinary intelligence must necessarily guess at their meaning and differ as to their application, have uniformly been declared unconstitutional as denying due process." However, ordinances are presumed to be valid and it is clear that a statute or ordinance must be considered in its entirety (*Huckaba v. Cox, 14 Ill.2d 126*). If there is a doubt as to the construction to be given an ordinance, the doubt must be resolved in favor of an interpretation which supports the ordinance. (*City of Benton v. Blake, 263 Ill. 358.*) In *Pliakos v. Liquor Control Com., 11 Ill.2d 456, 460,* this court observed: "[C]ourts should, if reasonably possible to

do so without violence to the spirit and language of an act, so interpret the statute, or the provision being construed, as to give it efficient operation and effect as a whole. An interpretation should, if possible, be avoided, under which the statute or provision being construed is defeated, or as otherwise expressed, nullified, destroyed, emasculated, repealed, explained away, or rendered insignificant, meaningless, inoperative, or nugatory."

We consider that the ambiguities argued are but surface or superficial ambiguities and that the expressions of intention in the ordinance to create a use tax are dominating and clear. For example, it can be seen that the reference in 178.1—2(a) to the tax on cigarettes "possessed for sale" does not indicate that an occupation tax was intended when one considers the definition of "use" in section 178.1—1. "Use" is defined in section 178.1—1 to mean "any exercise of a right or power, actual or constructive, and shall include but is not limited to the receipt, storage, or any keeping or retention for any length of time, but shall not include possession for sale by a retail or wholesale tobacco dealer as defined in this chapter." Too, referring to section 178.1—9(b), the drafters of the ordinance were certainly aware that wholesalers do not sell directly to the consumer. The language complained of by Bloom reasonably is to be interpreted as referring to wholesalers who sell cigarettes for ultimate sale or consumption in Chicago.

Another complaint of Bloom is that the due-process and interstate-commerce provisions of the constitution of the United States are violated by the ordinance. It is argued that both of the constitutional clauses are violated by the ordinance's extending Chicago's taxing powers beyond its borders and by imposing its tax in a manner which subjects interstate commerce to multiple taxation. The arguments are substantially that the ordinance requires a wholesaler to remit the tax when he makes a sale to a retailer in Chicago regardless of whether the cigarettes

are to be used within or without the State of Illinois. Also, a retailer is prohibited from purchasing cigarettes not bearing tax stamps, even if the purchaser from the retailer uses the cigarettes outside the State of Illinois, and an out-of-state purchaser is required to pay the tax even if his use of the cigarettes is to be outside the State of Illinois. The multiple taxation upon interstate commerce arises, it is said, when an out-of-state purchaser buys cigarettes from a retailer in Chicago and is subjected to a double taxation if his own State imposes a tax upon the use of cigarettes. It is suggested by Bloom that an Indiana resident would be required to pay both the Chicago cigarette tax and Indiana use tax, since the only exemption, it is claimed, which is recognized in Indiana is a sales tax which may have been paid in another State. Bloom cites *General Motors Corp. v. Washington, 377 U.S. 436, 12 L.Ed.2d 430, 84 S.Ct. 1564,* to support the claim that multiple taxation violates the interstate commerce clause.

Bloom's argument that the ordinance provides for the tax regardless of whether the cigarettes are to be used outside the State of Illinois ignores the definition of "use" which appears in the ordinance. To repeat the definition of "use", section 178.1—1 provides: " 'Use' means any exercise of a right or power, actual or constructive and shall include but is not limited to the receipt, storage, or any keeping or retention for any length of time, but shall not include possession for sale by a retail or wholesale tobacco dealer as defined in this chapter." Thus, cigarettes are typically "used" when they are received by the purchaser at the time of sale in Chicago. In saying "regardless of whether they are used in the state of Illinois," Bloom disregards the definition of "use" appearing in the ordinance.

Referring to the constitutional claim of "multiple taxation," we would note that the Supreme Court in *General Motors Corp. v. Washington, 377 U.S. 436, 449, 12 L.Ed.2d 430, 440, 84 S.Ct. 1564,* which Bloom has

cited, remarked: "The Court touched upon the problem of multiple taxation in *Northwest Airlines v. Minnesota, supra,* [322 U.S.] at 295, but laid it to one side as 'not now before us.' Thereafter, in *Northwestern States Portland Cement Co. v. Minnesota, supra,* [358 U.S.] at 463, we held that '[i]n this type of case the taxpayers must show that the formula places a burden upon interstate commerce in a constitutional sense.' Appellant has not done this. It has not demonstrated what definite burden, in a constitutional sense, the St. Louis tax places on the identical interstate shipments by which Washington measures its tax." Here Bloom has not shown that the ordinance "places a burden upon interstate commerce in a constitutional sense." We will not gratuitously assume a constitutional problem and make merely abstract declarations of rights.

We have responded to these arguments of Bloom without challenging its standing to raise questions with respect to out-of-state wholesalers or purchasers. But in oral argument it was conceded by Bloom that no out-of-state purchasers were represented in the declaratory judgment action and the only named member of the class of wholesalers is S. Bloom, Inc., an Illinois corporation. We said of the declaratory judgment action in *Gouker v. Board of Supervisors, 37 Ill.2d 473:* "Since there is no showing that the interim financing provisions of the Act are involved, the issue of their constitutionality cannot be raised and passed on as abstract propositions of law." *(Cf. The Saline Branch Drainage District v. Sanitary District, 399 Ill. 189.)* And in *Beck v. Binks, 19 Ill.2d 72,* this court observed: "At the outset we are confronted with the question of whether the complaint states a cause of action under the provisions of the declaratory judgment section of the Civil Practice Act. (Ill.Rev.Stat. 1957, ch. 110, par. 57.1.) It provides in part: 'The court may, in cases of actual controversy, make binding declarations of rights, *** at the instance of anyone interested in the

controversy, \*\*\*.' That provision does not authorize a court to grant declarations of rights involving mere abstract propositions of law without regard to the interests of the parties. An actual controversy must exist before a declaration of rights may be made. *(Exchange National Bank v. County of Cook, 6 Ill.2d 419; Spalding v. City of Granite City, 415 Ill. 274.)*"

The defendants' cross-appeal in No. 44895 from the trial court's judgment that section 178.1—4(b) of the ordinance was unconstitutional is well founded. The section provides:

"(b) The City Collector may appoint wholesale tobacco dealers of cigarettes and any other person within or without the City as agents to affix stamps to be used in paying the tax hereby imposed and said agent is hereby authorized to appoint other persons in his employ who are to affix said stamps to any cigarettes under his control in the manner prescribed by the rules and regulations promulgated by the City Collector. Whenever the City Collector shall sell, consign or deliver to any such agent any such stamps, such agent shall be entitled to receive as compensation for his services and expenses in affixing such stamps, and to retain use of the monies to be paid by him for such stamps a commission on the par value thereof. The City Comptroller is hereby authorized to prescribe a schedule of commissions not exceeding five percent allowable to such agent for affixing such stamps; provided, however, that the City Comptroller may authorize commissions to agents not exceeding ten percent for a special period not exceeding thirty (30) days immediately following the adoption of this chapter to cover the initial stamping of packages of cigarettes. Such schedule shall be uniform for each type and denomination of stamp used and may be on a graduated scale with respect to the number of stamps purchased. The City Collector may, in his discretion, permit an agent to pay for such stamps within thirty (30) days after the date of sale, consignment or delivery of such stamps to such agent, provided a bond satisfactory to the City Comptroller and approved as to form and legality by the Corporation Counsel shall be submitted by said agent to the City Comptroller in an amount not less than the par value of such stamps."

It would appear that the principal ground of the trial court's ruling was that the section unlawfully empowered the city comptroller to establish a schedule of commissions.

We do not judge that the section is invalid. We said in *Brown v. City of Chicago, 42 Ill.2d 501, 506,* where we considered firearms ordinances enacted by the city of Chicago: "Absolute criteria whereby every detail necessary in the enforcement of a law is anticipated need not be set forth in the ordinance itself. While a legislative body cannot delegate its general power to determine what the law shall be, it may delegate to others the authority to do those things which it might properly do itself but cannot do as understandingly or advantageously. *(Hill v. Relyea, 34 Ill.2d 552.)* The city collector in administering the ordinance is in a position to determine more advantageously when and what further descriptive information is needed. In doing so he is not exercising a legislative power as contemplated by the separation-of-powers article in the constitution."

The schedule of commissions to be set is not to be at the uncontrolled discretion of the city comptroller. The maximum commission allowable cannot under the ordinance exceed five percent. In *Heyman v. Mahin, 49 Ill.2d 284,* we held that the providing by statute of graduated discounts for collecting under the Cigarette Tax Act was valid. The trial court here was of the view that *Heyman* was distinguishable, because there the graduated scale had been established by the statute. However, we consider that the establishment of a maximum commission in the ordinance is a sufficient control and standard to defeat a charge that the section represented an unlawful delegation of legislative authority. Using our language in *Brown v. City of Chicago, 42 Ill.2d 501,* the city council well may have considered that "it [would] delegate to others the authority to do those things which it might properly do itself but cannot do as understandingly or advantageous-

ly." The trial court also regarded as constitutionally objectionable the provision that the collector in his discretion may, in effect, extend credit to a collecting agent, provided that the agent furnish a bond satisfactory to the city comptroller. We do not regard this as an improper delegation of legislative authority. The city council did not give an unregulated discretion to the city collector to extend credit. The section requires that the bond to be furnished by the agent be satisfactory to the city comptroller and that its form and legality be approved by the corporation counsel of Chicago. Too, the section provides that the amount of the bond shall not be less than the amount of the credit extended.

For the reasons given the judgments in 44895 and 44937 of the circuit court of Cook County are affirmed, excepting that portion of the judgment in 44895 which declared section 178.1—4(b) of the ordinance to be unconstitutional, which portion of that judgment is reversed.

*Affirmed in part and reversed in part as to 44895; affirmed as to 44937.*