NILE M. MARRIOTT, JR., *et al.*, Plaintiffs-Appellants, *v.* SPRINGFIELD SANITARY DISTRICT *et al.*, Defendants-Appellees.—(J. F. WEISKOPF & SONS, INC., Plaintiff-Appellant, *v.* SPRINGFIELD SANITARY DISTRICT *et al.*, Defendants-Appellees.)

Fourth District    No. 12800

Opinion filed November 18, 1976.

Howarth Law Offices, of Springfield, for appellants.

Hugh J. Graham, Jr., of Graham & Graham, and Robert F. Scott, both of Springfield, for appellees.

Mr. PRESIDING JUSTICE TRAPP delivered the opinion of the court:

In plaintiffs' action for declaratory judgment and injunction, the trial court adjudged that the ordinance of the Springfield Sanitary District, effective April 1, 1970, establishing certain "connection fees" was not so vague and uncertain as to deprive plaintiffs of due process or equal protection of the law; that the classification of use as a "dwelling unit" and "non-dwelling building" for the purpose of fixing such fee was not an arbitrary classification without basis in reason; that there was no evidence or errors in the administration of the ordinance involving discrimination which deprived plaintiffs of due process or equal protection of the law; that the sums paid under protest by plaintiffs were proper charges for their respective fees; that section 7 of the Sanitary District Act of 1917 (Ill. Rev. Stat. 1969, ch. 42, par. 306) does not violate the several sections of either the Illinois Constitutions of 1870 or 1970, or of the 14th Amendment to the Constitution of the United States, and that there was no just reason for delaying appeal. The plaintiffs appeal.

The Springfield Sanitary District was organized in 1924, and from time to time annexations were effected. As of the date of the ordinance at issue, defendant District included both the City of Springfield and areas outside of the City limits.

For many years the City of Springfield has maintained, at its own expense, all of the public sewer lines within the corporate limits of the

City of Springfield except for those few instances in which an intercept sewer (one carrying sewage collected from City of Springfield trunk lines and from other public sewers with the help of pumping stations, directly to the treatment plant on the north side of the District) may pass in and out of the City of Springfield on its way to the treatment plant. The defendant District maintains and operates the treatment plant, all intercept sewers, and all public sewers outside the corporate limits of Springfield regardless of whether they are inside or outside of an incorporated city or village in the district other than the City of Springfield.

On or about March 22, 1966, in exchange for defendant District's promise to enforce their mutual rules and regulations prohibiting property owners and others from connecting downspouts directly to sewer lines within the corporate limits of Springfield, the City of Springfield surrendered to defendant District the right to collect sewer connection fees and other fees within the corporate limits of the City of Springfield, the City retaining the obligation of maintaining said sewers and also jurisdiction of plumbing within the buildings.

On or about the year 1956, defendant District and the City of Springfield also entered into a mutual agreement whereby, in substance, defendant District put into effect a sewer service charge measured by the volume of water drawn by occupants of a property as established by water meters, enforceable throughout the entire district, both inside and outside the City of Springfield. The City of Springfield at the same time adopted a sewer service charge similar to the rates of defendant District; and defendant District then abated and agreed not to enforce that part of its sewer service charge otherwise applicable within the corporate limits of the City of Springfield, as long as the City of Springfield kept its said rates in effect. The revenues therefrom, after deducting collection fees, were divided between the City of Springfield and the District in accordance with an agreed formula.

Plaintiff, Marriott, owned a parcel of land within the limits of the District upon which he was constructing two buildings, each containing six residential units. These replaced a one-family residence located upon the parcel. The District demanded a net connection fee of $2200 after credit for the dwelling replaced by the new construction.

Plaintiff, Weiskopf, is a plumbing contractor who, on August 6, 1971, bid upon four apartment buildings containing 64 one-bedroom apartments and 176 two-bedroom apartments. The contract required that he pay the connection fees. Such bid was made upon a computation of $15 times the number of plumbed fixtures, or the sum of $24,240. The District demanded the fee be computed under the ordinance as $200 for each dwelling unit, or the sum of $48,000.

Section 1 of the ordinance contains the following relevant definitions: "(k) 'Dwelling Unit' is (1) a single family residence, (2) each apartment in an apartment building or other multiple unit dwelling, (3) each trailer or space in a trailer park. (1) 'Non Dwelling Unit' (sic) is a building or buildings used for commercial (including motel or hotel), industrial or public (including church and school buildings) purposes. (m) 'Plumbed Fixture' shall be each stool, lavatory, bath, shower, sink, floor drain, or drain from any appliance or facility which may drain water or wastes to the Sanitary Sewer."

Section 5 refers to the described structures and provides: "(a) Dwelling Unit Connection Fee. There shall be a connection charge in the amount of Two Hundred Dollars ($200.00) per dwelling unit. (b) Non Dwelling Building. There shall be a connection charge of Fifteen Dollars ($15.00) per plumbed fixture in a non-dwelling building with a minimum charge of Two Hundred Dollars ($200.00).

In each case credit shall be given to the applicant for the number of units being served through an existing sewer connected to the Sanitary District facilities at the time the reconstruction or remodeling of the building then served and/or to be served is commenced.

Where undeveloped property has been within the original boundaries of the Sanitary District and has paid taxes to said The Springfield Sanitary District thereon, the amount of such taxes paid shall be credited against the connection fees as stated above. In such instance, it shall be the obligation of the person desiring such reduction in the connection fee to furnish satisfactory proof of the amount of taxes paid to the District."

Section 6 provides for the creation of a capital improvement fund and states: "(a) All connection fees collected hereunder shall be kept by the Treasurer in the capital improvement fund, except those required for the administration of this Ordinance. ·

(b) The capital improvement fund shall be used only for the construction of improvements to The Springfield Sanitary District plant, and of the interceptor or main lines of The Springfield Sanitary District system as it is now or will in the future be constituted; * * *."

Section 12 of the ordinance regulates the temperature of liquids or vapors discharged into the sewer, prohibits the discharge of fat, oil or grease, gasoline or other petroleum, garbage not properly shredded, or any other solid or viscous substance designated solid matter and corrosive

materials, poisonous substances and waste containing suspended particles.

Subparagraph (b) of the section provides that discharge into the District sewer of waste having a 5-day biochemical oxygen demand greater than 300 parts per millions by weight shall be subject to a review and approval of the District engineer and where necessary, in the opinion of such engineer, the owner shall provide, at his own expense, such preliminary treatment as may be necessary to reduce the biochemical oxygen demand to 300 parts per million or to reduce suspended solids as provided by ordinance. It further provides that where preliminary treatment facilities are provided they shall be maintained continuously in satisfactory and effective operation by the owner at his expense.

Plaintiffs contend that section 7 of the Sanitary District Act of 1917 (Ill. Rev. Stat. 1969, ch. 42, par. 306) is unconstitutional insofar as it provides:

"In providing works, including the main pipes referred to above, for the disposal of raw sewage, in the manner above provided, whether such sewage is disposed of in combination with municipal sewage or independently, the Sanitary District shall have power to collect a fair and reasonable charge for connection to its system in addition to those charges covered by normal taxes, for the construction, expansion and extension of the works of the system, *the charge to be assessed against new or additional users of the system* and to be known as a connection charge. The funds thus collected shall be used by the Sanitary District for its general corporate purposes with primary application thereof being made by the necessary expansion of the works of the system to meet the requirements of the new users thereof." (Emphasis supplied.)

■■ It is said that the provision deprives plaintiffs of equal protection of the laws under the State and Federal constitutions and discriminates as to property owners who are "new users" of the system. Plaintiffs argue that while such provision was held to be constitutional in *Spalding v. City of Granite City* (1953), 415 Ill. 274, 113 N.E.2d 567, and *Hartman v. Aurora Sanitary District* (1961), 23 Ill. 2d 109, 177 N.E.2d 214, such holding was directed and limited to the fact that the new and additional users there concerned were in a geographical area not theretofore served by any sewer system so that the charge was for construction of a new and additional sewer system. *Spalding* and *Hartman* necessarily spoke in terms of the issues within the record presented. The statute concerned presents no language suggesting a geographical test limiting the statutory authority. Rather the statute is clearly directed to the increase of burden or load placed upon the system and the necessity for increasing the capacity for handling such increased burden. This record includes evidence that much of the current building within the District has

increased the population density from 10 persons per acre to 50 persons per acre. It appears clear that such change of density of population is a new and additional use in terms of burden upon the system just as is a geographical extension. Neither *Spalding* nor *Hartman* had occasion to consider the fact of an increase by use within the area, but we cannot realistically say that upon the facts present the Supreme Court would consider the statute unconstitutional by reason of the fact that the increase in sewer load was not accompanied by, or the result of, an extension of the system into territory not before served.

The argument that the ordinance reflects a philosophy of charging a fee "[t]o pay something special into the community 'kitty' to pay for the work done by the first settlors" is without merit. Section 6 of the ordinance expressly provides that the fees charged are to go into the capital improvement fund and to be expended only for the construction of improvements of the District plant and its principal lines in the future.

The scheme of the statute and of the ordinance is that fees charged are directed to fund improvements required by the burden of increased usage. This conclusion is supported by the fact that the ordinance provides a credit against such connection charge equal to the sewer usage which the owner had or was entitled to at the time and place of an increase in burden placed upon the existing system by reason of a change in the use of his property.

Plaintiffs cite *Shapiro v. Thompson* (1969), 394 U.S. 618, 22 L. Ed. 2d 600, 89 S. Ct. 1322, in support of the contention that the statute is unconstitutional. That opinion concerns certain statutes requiring one year of residence prior to achieving eligibility for public aid. The opinion is keyed to the constitutional concept of the individual's personal liberty to travel within the country and from one State to another, and the court concluded that the challenged statutes inhibited such liberty. It is clear that the statute at hand is not concerned with inhibiting any such right as was discussed.

■■ It is further argued that the ordinance classification of use in the dwelling and non-dwelling uses is unreasonable. It is clear that in terms of the classification imposed, the connection fee is the same for all dwelling units and that the builder of a multiple-dwelling building pays the same fee for each dwelling unit as would the owner of a single-family residence, or the owner of a trailer or trailer space. The argument is that the proper method is to measure the hydraulic volume and the accompanying chemical, organic and solid wastes. The record shows that there is, in fact a service charge computed periodically upon the basis of the volume of water discharged into the system. Section 12 of the ordinance specifically provides that excessive quantities of water cannot be discharged into the system without approval of the District engineer,

and that control of quantity and rate of discharge may be imposed upon the user prior to connection to the system. That section also excludes many chemical, solid and organic wastes, or requires approved methods of keeping them from the system, or a preliminary treatment to bring such excessive wastes to approved standards to be provided and maintained at the users' expense. We cannot say that the ordinance has not made reasonable provision to deal with the excessive burdens of hydraulics upon the system.

The record shows that other districts may employ different methods to determine the fees and the opinion testimony reflects, as the trial court found, that opinions differ upon the most effective way to determine the fee charged. Classification for purposes of legislation is not required to be scientific if it is reasonably adapted to secure the purpose for which it is intended and is not purely arbitrary. (*Stewart v. Brady* (1921), 300 Ill. 425, 133 N.E. 310.) Where the reasonableness of the legislation is fairly debatable the courts will not interfere. *Thillens, Inc. v. Morey* (1957), 11 Ill. 2d 579, 144 N.E.2d 735.

Here, Marriott was charged $2200. The record discloses some comparative figures in that under the ordinance of Bloom Township the fee would be $2775, in Aurora $2500, and in Champaign the fee would be $1800.

Plaintiff, Weiskopf, was charged $48,000. Comparable construction in Bloom township would require a fee of $50,400; in Aurora $48,100, and in Champaign $36,000. Thus, the record does not disclose such gross disparity as to indicate any unconstitutional or unreasonable fee as to multiple unit dwellings.

It is argued that the ordinance is so vague in terms and definition as to amount to the denial of due process and equal protection of the law. A selection of alleged infirmatives is argued. We note initially that the construction of the ordinance must be determined by consideration of the entire ordinance and that each provision should be construed in connection with every other part. S. *Bloom, Inc. v. Korshak* (1972), 52 Ill. 2d 56, 284 N.E.2d 257; *Huckaba v. Cox* (1958), 14 Ill. 2d 126, 150 N.E.2d 832.

■■ Courts will not determine the constitutionality of the provisions of an Act which do not affect the parties to the cause under consideration, or where the party urging the invalidity is not in any way aggrieved by their operation. *Rosewood Corp. v. Fisher* (1070), 46 Ill. 2d 249, 263 N.E.2d 833; *Schreiber v. County Board of School Trustees* (1964), 31 Ill. 2d 121, 198 N.E.2d 848.

It is argued that the ordinance does not define a "connection" and plaintiffs contend that one cannot know his liabilities if he simply attaches his construction to an existing sewer on his own premises. It does not

appear that this case concerns a question of connection actually affecting or confronting plaintiffs, or that they claim they are not properly charged for any connection fee. They simply complain of the amount of the fee.

Plaintiffs complain of vagueness in the definition of a non-dwelling building in that it refers to industrial, commercial or public buildings, but fails to speak of educational, religious buildings, other than schools or churches, or clubs. It appears that each of the several hypotheticals stated is clearly a non-dwelling use. The basis of classification is dwelling use and non-dwelling use, and the fine line of whether the several uses named should be called industrial, commercial or public is not an issue affecting the plaintiffs who seek to construct dwelling units. Similarly, the liability of plaintiffs for the connection charge is not concerned with the matter of computing charges for buildings of mixed use, *i.e.*, one which has some dwelling units in a building which also has non-dwelling use. Again, such provision does not directly affect the plaintiffs and plaintiffs present no questions as to a charge for a non-dwelling use.

Section 3 of the ordinance prohibits unauthorized interference with the sewer system, including "[a]ny sewer tributary to a District sewer." Section 7.2 of the Sanitary District Act of 1917 (Ill. Rev. Stat. 1969, ch. 42, par. 306.2) actually defines the phrase as a sewer under the jurisdiction of a city, village or incorporated town connected to the sewer system of the Sanitary District, and section 3 of the ordinance appears to be concerned with the authority contained in such statute. Plaintiffs, however, do not present any issue of an unauthorized interference with a sewer tributary to a District sewer to be determined as a part of plaintiffs' claims.

■■ The argument of vagueness is directed to certain language of section 5 referring to "undeveloped property within the original boundaries of the Sanitary District * * *," and to the credit for "taxes [paid] to said the Springfield Sanitary District." In the context of the whole ordinance it is proper to conclude that undeveloped property relates to property which has not had a prior sewer connection. Neither plaintiff complains of the denial of the credit to which he is entitled for former connection or for taxes paid, and it is not necessary to pass upon any constitutional argument made.

Plaintiffs contend that the administration of the ordinance by the trustees deprives them of the equal protection of the laws, citing *Yick Wo v. Hopkins* (1886), 118 U.S. 356, 30 L. Ed. 220, 6 S. Ct. 1064. That opinion establishes that a statute valid upon its face may nevertheless be so oppressively administered that invidious discrimination against classes of people or individuals brings about denial of the equal protection of the laws.

Section 4 of the Sanitary District Act of 1917 (Ill. Rev. Stat. 1969, ch. 42, par. 303) provides:

"The board of trustees has full power to pass all necessary ordinances, rules and regulations for the proper management and conduct of the business of the board and the corporation, and for carrying into effect the objects for which the sanitary district was formed."

Plaintiffs complain that the District trustees established certain policies with regard to fees and charges in special assessment projects of the District, (1) where such project was within the bounds of the original District and, (2) where the project was within areas annexed to the District which deny plaintiffs equal protection. An effect of such policies was to give a credit for special assessments paid. There was also provision that the connection fees in such projects, after project No. 73, would be charged under the new ordinance. Plaintiffs complain that as a result of such policy, the construction of Sangamon State University, a project within a special assessment district, was charged at the former rate, *i.e.*, $10 per plumbed fixture rather than the $15 in the new ordinance.

The plaintiffs further introduced evidence as to a certain housing project for which bids had been accepted in 1969, prior to adoption of the current ordinance. Officials of the Housing Authority and its contractors presented the facts to the trustees who, after consideration of such facts, authorized charges upon the basis of the fees in prior ordinances. There was also evidence of a trailer court whose proprietor had had a pending controversy over charges to be made for sewer connections. He had built a part of the sewer used. As a result of negotiations the trustees did not claim the new fees for the trailer spaces in controversy, but directed that such be charged for future additions to the trailer use.

■■ Each of such policies were adopted within a short time prior to or after the effective date of the ordinance and each related to transactions pending at the time of the effective date. It is apparent that in a period of transition from old ordinances of some years' standing to the new ordinance there are questions of policy and adjustments to be necessarily made. In each instance the minutes of the trustees show consideration of questions of fact, calling for the exercise of reasonable judgment. We conclude, as did the trial court, that the record does not show an administration of the ordinance directed to oppressing any class of persons, nor does it show a design or purpose to favor any class of persons. For such reasons the principles of law announced in *Yick Wo* are not properly applicable to this case, and the facts presented do not suffice to show an invidious discrimination in the administration of the ordinance. *Thillens, Inc. v. Morey* (1957), 11 Ill. 2d 579, 144 N.E.2d 735; *Village of Cahokia v. Wright* (1973), 11 Ill. App. 3d 124, 296 N.E.2d 30.

Plaintiffs have the burden of proving the invalidity of the ordinance by clear and convincing evidence. (*Westfield v. City of Chicago* (1962), 26

Ill. 2d 526, 187 N.E.2d 208; *Reskin v. City of Northlake* (1965), 55 Ill. App. 2d 184, 204 N.E.2d 600.) We conclude that the plaintiffs have, at most, raised some questions that may be debatable, but upon such record the court will not interfere with the judgment of the legislative department. *Thillens, Inc. v. Morey* (1957), 11 Ill. 2d 579, 144 N.E.2d 735.

The judgments are affirmed.

Affirmed.

GREEN and SIMKINS, JJ., concur.