THE GREATER CHILLICOTHE SANITARY DISTRICT OF PEORIA
COUNTY, Plaintiff-Appellant, v. WILLIAM R. PRATHER, Defendant-Appellee.

Third District   No. 3—86—0595

Opinion filed July 17, 1987.

Michael T. Mahoney, of Michael T. Mahoney, Ltd., of Chillicothe, for appellant.

Richard E. Quinn, Gery R. Gasick, and Kevin M. Miller, all of McConnell, Kennedy, Quinn & Johnston, of Peoria, for appellee.

John Roseberg, of Illinois Association of Sanitary Districts, of Rockford, for *amicus curiae.*

JUSTICE GREEN delivered the opinion of the court:

Section 7 of the Sanitary District Act of 1917 (Act) states in part:

> "Every [district created under the Act] *shall proceed as rapidly as is reasonably possible to provide sewers* and a plant or plants for the treatment and purification of its sewage, which plant or plants shall be of suitable kind and sufficient capacity to properly treat and purify such sewage so as to conduce to the preservation of the public health, comfort and convenience and to render the sewage harmless, insofar as is reasonably possible to animal, fish and plant life." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 42, par. 306.)

This case concerns a sanitary district organized under the Act within the boundaries of which are a single city and a substantial unincorporated area which is not as densely populated. The district has provided a treatment plant, a pumping station and an interceptor sewer within the city. The city has provided lateral sewers providing service to the entire city. The crucial question presented concerns the duty, if any, of the district to provide sewers to service the unincorporated areas of the district.

On January 24, 1984, plaintiff, the Greater Chillicothe Sanitary District of Peoria County, Illinois (District), organized under the Act, brought suit in the circuit court of Peoria County against defendant, William R. Prather. The complaint alleged that defendant had demanded that the District build a sewer to his property which lies outside the city of Chillicothe (city), the District's only municipality. The District requested the court to make a declaration as to its obligation to build such a line and as to the manner in which such a project should be financed if it were so ordered. After issue was joined, the

court held a bench trial at which most of the evidence consisted of stipulations.

On February 5, 1986, the court entered a judgment declaring that the District had no duty to build such a line. Then, on defendant's motion, the judgment was vacated. After hearing further evidence, the court entered a judgment on May 7, 1986, declaring that the District was obligated "to provide sewer lines for the defendant, and all other unserviced residents within the sanitary district, as rapidly as is reasonably possible." The judgment also declared that the defendant pay a "fair and reasonable charge for connection" to the District's sewer in an amount to be fixed by the District but not to exceed $200.

The District has appealed contending: (1) any declaration in regard to unserviced persons other than defendant was improper, because no showing was made that a controversy existed as to them; (2) only defendant should pay for an extension to his property because such an extension was in the nature of a local improvement; (3) the District has delegated the responsibility of constructing lateral sewers to the city, and the defendant has recognized that delegation by a request that a line to his property connect to lateral sewers belonging to the city; (4) defendant is estopped to claim a right for the installation of a sewer to his property because his predecessor in title previously rejected an offer of the District to build such a sewer; and (5) even if the District is required to build such a sewer, the court improperly ruled as to the amount the District might charge defendant to connect to the sewer. Upon leave being granted, the Illinois Association of Sanitary District has filed a brief *amicus curiae* asking us to hold that the District had no duty to construct the line in question.

The problem faced by the circuit court and now facing us arises from the following set of facts which the parties agree to exist. As we have indicated, the area of the District consists not only of that within the corporate limits of the city but a substantial, less densely populated area on three sides of the city. The sewers built by the District are all interceptor sewers, and none exist beyond the corporate limits of the city. The city has then provided lateral sewers to various parcels of property within the city. The owners of property in the District, both inside and outside of the city, have paid property taxes and fees inuring to the District. These funds have been used to retire the bond issue for the construction of the treatment plant, pumping station and interceptor sewer and have been used for the operation of those facilities. Property owners in the area outside the city have not been required to pay for the construction or operation of the lateral sewers serving property within the city.

The parties further agree that the following facts are also pertinent to the instant dispute. Defendant's premises are outside the city but are bounded on United States Route 29, which is a boundary of the city. His property has no direct access to a District or city sewer, but a city lateral sewer runs on the side of Route 29 opposite to his property. The city has agreed that a sewer from defendant's land may be attached to that lateral sewer. The cost of installing such a sewer under Route 29 would have been approximately $21,000. The closest District interceptor lies approximately one-half of a mile from defendant's tract and the approximate cost of installing a sewer from defendant's property to that interceptor would have been $100,000.

■ We agree with the District that the question of its duty to its other unserved property owners was not properly before the circuit court. The proceeding before the court was one for a declaratory judgment, the basic predicate for which is an actual dispute between the parties. (*Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 362 N.E.2d 298; Ill. Rev. Stat. 1983, ch. 110, par. 2—701.) Clearly such a situation existed between the District and defendant, who had demanded the construction of a sewer line. No showing was made of a similar demand by others. Defendant maintains that we cannot determine whether the District has a duty to build a line to defendant's property without determining the District's duty to other landowners in the unincorporated area. We disagree, because, as we will explain, we find defendant's situation to have aspects not common to most others in the unincorporated area.

■ Moreover, other property owners were not made parties, nor was any person or entity having a common interest with them. The request for declaration as to other rights was raised for the first time by defendant in his motion to reconsider the circuit court's original judgment. The circuit court's stated motive for declaring the rights of other unserved property owners was to prevent multiple litigation which seemed likely if the rights of all unserved owners were not adjudicated in this case. The motive was highly commendable, but the issue sought to be raised could not be reached.

■ The question of the District's obligation to furnish sanitary sewer service to defendant was properly before the circuit court and is now before us. That allegation arises primarily from the previously quoted portion of section 7 of the Act, which directs the District to "proceed as rapidly as is reasonably possible to provide sewers" and other facilities. (Ill. Rev. Stat. 1983, ch. 42, par. 306.) Section 19 of the Act provides that a sanitary district may "defray" the cost of building its facilities either through "special assessment or by general

taxation." (Ill. Rev. Stat. 1983, ch. 42, par. 317a.) The building of a treatment works for an entire system and the construction of interceptor sewers and pumping stations for them are not generally considered to be local improvements. The provisions of section 19 concerning the financing for the furnishing of such facilities indicate that either assessments or general taxation are appropriate as long as assessments, if used, are made only according to benefits.

On the other hand, the construction of lateral sewers to provide service to individual parcels of land in the district is generally considered to constitute a local improvement. (*City of Edwardsville v. Jenkins* (1941), 376 Ill. 327, 33 N.E.2d 598; *Judge v. Bergman* (1913), 258 Ill. 246, 101 N.E. 574.) The laterals can be supplied by a municipality, as done here for the land within the city (see Ill. Rev. Stat. 1983, ch. 24, par. 9—2—1), or by making special assessments for a local improvement pursuant to section 19. (*Judge v. Bergman* (1913), 258 Ill. 246, 101 N.E. 574.) We are aware of no case requiring a sanitary district to provide service to a particular tract and to finance it for the most part by use of district funds.

In comparatively recent years, other methods have been used for charging for the construction expenses of sanitary sewer facilities. Section 7 of the Act authorizes districts providing for the disposal of industrial wastes to impose an additional charge upon such industrial users and to use those proceeds in part to defray construction costs (Ill. Rev. Stat. 1983, ch. 42, par. 306). Section 7 also states in part:

"In providing works, including the main pipes referred to above, for the disposal of raw sewage, in the manner above provided, whether such sewage is disposed of in combination with municipal sewage or independently, the Sanitary District shall have power to collect a fair and reasonable charge for connection to its system in addition to those charges covered by normal taxes, for the construction, expansion and extension of the works of the system, the charge to be assessed against new or additional users of the system and to be known as a connection charge." Ill. Rev. Stat. 1983, ch. 42, par. 306.

In *Hartman v. Aurora Sanitary District* (1961), 23 Ill. 2d 109, 177 N.E.2d 214, a sanitary district required a person wishing to connect to the drains of the district a fee of $160, which was to be used in part to defray the costs of inspecting the connection and in part to reimburse the general fund of the district for the expenditures that had previously been made to construct its sewer system. The fee was assessed pursuant to an ordinance adopted in accordance with the connection fee provisions of section 7 of the Act. The Illinois Supreme

Court upheld the validity of the charge even though the facilities of the district had been paid for fully. Then, in *Marriott v. Springfield Sanitary District* (1976), 43 Ill. App. 3d 869, 357 N.E.2d 666, the Fourth District upheld connection fees for connection of sanitary drains from apartments in the sums of $2,200 and $48,000, which fees were to be used partly for construction of improvements for the district. The opinion indicated that evidence had been received that many sanitary districts were making similar charges. Collection of the same kind of charges for connection to sanitary sewers have been upheld when levied by municipalities. (*La Salle National Bank v. City of Warrenville* (1982), 105 Ill. App. 3d 643, 434 N.E.2d 549; *Heinrich v. City of Moline* (1978), 59 Ill. App. 3d 278, 375 N.E.2d 572.) Notably, the fee being charged is a fee for the permission to connect. In *Hartman*, a substantial portion of the fee was used for reimbursement for the cost of inspecting the hookup, although some of the fee was used to cover construction costs. In the later cases, most of the fee was used to compensate for construction costs.

In contending that it has no obligation to extend sewer service to defendant's land, the District places strong reliance on language in *Hartman v. Aurora Sanitary District* (1961), 23 Ill. 2d 109, 177 N.E.2d 214, stating that the Act *"merely permits* the District to offer to residents of a new area a convenient and economical way of handling" their sanitation problems, but that the residents were not required to connect to the district. (Emphasis added.) (23 Ill. 2d 109, 116, 177 N.E.2d 214, 219.) We do not interpret that language to completely absolve a sanitary district from furnishing services to a resident unless that resident agreed to pay whatever charge the district might wish to impose. We are not holding here that the District has no enforceable duty to extend its interceptor sewers into the unincorporated area.

As we have indicated, the District had built and placed in operation a treatment plant, a pumping station and interceptor sewers. The city had furnished for those properties in the city, lateral sewers for which the funds of the District were not charged. These laterals brought sewer service to the parcels within the city. By the terms of section 7.2 of the Act (Ill. Rev. Stat. 1983, ch. 42, par. 306.2), the District retains power to regulate and control connections to those city lines and to charge for connections thereto. (*Marriott v. Springfield Sanitary District* (1976), 43 Ill. App. 3d 869, 357 N.E.2d 666.) The city has agreed to permit defendant to connect to that line which lies across Route 29 from defendant's land. Even if a requirement were to be placed upon the District to extend its interceptor sewers into the

unincorporated area, we do not foresee that it would be feasible to require the District to bring interceptors closer to the property of all owners than the city lateral sewer is to defendant's property. Nor would it be likely that the District could feasibly be required to bring interceptors close enough to all the properties requesting service that connection could be made in a manner any less expensive than that whereby defendant can cross Route 29 and connect to the city lateral sewer.

The bringing of a line from defendant's property to the city interceptor is in the nature of a local improvement which we do not deem the Act to require the District to undertake. Defendant maintains that some others could also use it. We do not find any evidence to support this assertion. Moreover, even if a few others could use it, the sewer would still constitute a local improvement, the cost for which the District could require to be assessed to those receiving benefits.

■ We recognize that defendant and his predecessor in title have paid taxes to the District since its organization in about 1961 and have received no direct benefits. However, the receipt of direct benefits is not a condition precedent to the payment of taxes which are not an assessment for benefits. (*St. Louis & Southwestern Ry. Co. v. Nattin* (1928), 277. U.S. 157, 72 L. Ed. 2d 830, 48 S. Ct. 438; *St. Louis Bridge Co. v. City of East St. Louis* (1887), 121 Ill. 238, 12 N.E. 723.) The difficulty of extending services at reasonable costs to outlying areas was a problem that should have been considered when the District was formed. It is also a reason why persons now in that category might find some remedy in the provisions of section 24 of the Act (Ill. Rev. Stat. 1983, ch. 42, par. 317f) concerning detachment. We do not deem the circuit court's attempt to solve the problem by requiring the District to bring a sewer line to the property of defendant to be proper. Accordingly, we reverse the judgment making that requirement.

We need not consider other issues raised. We again wish to make clear that our ruling here has narrow limits. We are not ruling whether a court can properly order the District to extend its interceptors into the unincorporated area if proper parties are before the court and a feasible program is presented. We are also not ruling upon whether the District can elect to extend a line to defendant's property and then, pursuant to its ordinance of 1984 enacted under the provisions of section 7 of the Act (Ill. Rev. Stat. 1985, ch. 42, par. 306), impose upon defendant a connection charge for the full amount of the construction of the line.

The record here indicates the desirability for the District and

those in the outlying areas to work together to reach the best solution to the difficult problem faced. For the reasons stated, we cannot affirm the well-intentioned attempt of the circuit court to do so. Accordingly, the judgment appealed is reversed.

Reversed.

SPITZ, P.J., and LUND, J., concur.