THOMAS F. JUDGE, Appellant, *vs.* ADOLPH BERGMAN *et al.* Appellees.

*Opinion filed April 19, 1913.*

1. SANITARY DISTRICTS—*primary object of Sanitary District of Chicago.* The primary object in organizing the Sanitary District of Chicago was to dispose of the sewage of the district without pollution of the waters of Lake Michigan, which furnishes drinking water for the inhabitants of a large portion of the district.

2. SAME—*powers of sanitary district are not limited to territory outside of other municipalities.* The powers delegated to the Sanitary District of Chicago may be exercised in furtherance of the purposes of the district within as well as without the territory of other municipalities which are wholly or partly within the territory of the sanitary district.

3. SAME—*what is meant by "adjuncts" and "additions."* The words "adjuncts" and "additions," used in the Sanitary District act, mean auxiliary channels to bring the sewage and drainage from the sewers and sewer systems of the various municipalities within the district into the main channel of the district; but the question as to what is or is not an "adjunct" or "addition" must be determined by the facts of the particular case.

4. SAME—*purpose of constructing north shore channel.* The purpose of the construction of the north shore channel by the Sanitary District of Chicago was to convey the sewage of the city of Evanston, and of the other municipalities north of Chicago and within the boundaries of the district as extended by the act of 1903, to the main channel of the district through the connection of the north shore channel with the sewer systems of such municipalities.

5. SAME—*power of sanitary district to build intercepting sewer and pumping plant.* Where a city lying within the Sanitary District of Chicago has a complete and adequate system of sewers, which discharge into Lake Michigan, with the result that the water supply of inhabitants of the district living outside of the city is contaminated, the sanitary district may construct, at its own expense, an intercepting sewer, conduits and sewage pumping plant to divert the sewage into the channel of the district, without regard to the question whether the city would have power to make the same improvement. (*City of Chicago* v. *Green,* 238 Ill. 258, explained.)

APPEAL from the Branch "D" Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUT-HILL, Judge, presiding.

CALHOUN, LYFORD & SHEEAN, for appellant.

EDMUND D. ADCOCK, (JOHN C. WILLIAMS, and ROSS C. HALL, of counsel,) for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Thomas F. Judge, as a citizen and tax-payer of Cook county, filed a bill in equity for the purpose of enjoining the trustees of the Sanitary District of Chicago from constructing and maintaining a proposed system of conduits, sewers and a pumping station in the city of Evanston and from expending the funds of said sanitary district for said improvements, basing his claim for relief upon a want of power to construct and pay for said improvements. The theory of the bill is that the proposed conduits, sewers and pumping station are purely local improvements, designed to supplement the local sewer system of the city of Evanston, and as such should be constructed and paid for by the city of Evanston, by special assessment or otherwise. Defendants answered the bill, and the cause was heard by the court upon the bill and answer and a stipulation as to the facts. A decree was entered in the circuit court of Cook county

dismissing the bill for want of equity. To reverse that decree the complainant below prosecuted an appeal to the Appellate Court for the First District. The Appellate Court affirmed the decree of the circuit court, and granted a certificate of importance and an order allowing an appeal to this court.

The Appellate Court summarizes the material facts of the stipulation as follows: "That complainant is a citizen, a voter and a tax-payer of said sanitary district; that defendants are the trustees thereof; that the main channel of the district was completed in 1900, and that its effect was to change the course of the Chicago river so that it now flows away from Lake Michigan and discharges into the Desplaines river at Lockport, affording an outlet in that direction for the drainage and sewage of the city of Chicago, which formerly was discharged into the lake; that by the act of the General Assembly of May 14, 1903, said district was enlarged so as to include the city of Evanston and the villages of Wilmette, Gross Point, Kenilworth, Winnetka and Glencoe on the north and others on the south; that thereafter said district constructed a channel or drainage ditch known as the 'north shore channel,' extending from the north branch of the Chicago river to a point on the shore of Lake Michigan near the boundary line between Evanston and Wilmette, 'for the purpose of furnishing an outlet for the drainage and sewage of the city of Evanston, the village of Wilmette and other villages lying to the north of the city of Chicago,' which channel runs through the north-western portion of Evanston, and to provide for a sufficient flow of water for said channel a pumping station has been installed at the lake end of the same; that said channel 'is of sufficient capacity to carry off and divert into the north branch of the Chicago river, and thence into said main channel, all of the drainage and sewage of the village of Wilmette, the city of Evanston and all other villages lying north of the city of Chicago

when such drainage and sewage is diverted into said north shore channel;' that the city of Evanston has a shore line of approximately three and one-half miles along Lake Michigan, is from one and a half to two miles in width, with a population of over 25,000, and on and prior to May 23, 1912, had, and now maintains, an extensive system of sewers, through which the sewage and drainage of that part of the city which lies south and east of the north shore channel are discharged directly into Lake Michigan; that the effect of this is to pollute and contaminate the water of the lake, and 'that at times said contaminative effect extends as far south as to include a part of the water supply of the city of Chicago, and as far north as to include the water supply of some of the municipalities lying north of said city of Evanston;' that Lake Michigan is the source of the water supply of almost all of the people of the sanitary district; that the total assessed valuation of all taxable property within the limits of the city of Evanston for the year 1911 was $11,021,698, and its total indebtedness, including $146,100 of bonds, is $356,100; that on May 23, 1912, appellees, as trustees of said sanitary district, passed an order directing the chief engineer of the district to prepare detailed plans and specifications for the construction of a system of intercepting sewers and conduits at an estimated cost of $405,000, and that they are about to construct the same at the sole expense of said sanitary district; that the plans for said work provide for the construction of a pumping station on the lake front, in Evanston, for the purpose of pumping sewage coming from the lower parts of the city along the lake front to such an elevation that it can flow into the north shore channel of said district, 'it being impossible to divert said sewage into said north shore channel except by pumping the same;' that the 'proposed conduits are three feet in diameter at their southern extremities and gradually increase in size until said conduit is ten feet in diameter;' that 'the sole function of the

works covered by said order of May 23, 1912, and shown in heavy red lines on said complainant's Exhibit 1, is to receive from the sewers built and maintained by the city of Evanston, as shown on said Exhibit 1, the sewage before it is discharged into the waters of Lake Michigan and to convey the same into said north shore channel.' A map attached as Exhibit 1 shows in small lines and figures what seems to be a practically complete system of sewers covering the whole city of Evanston, the main lines of which run east and discharge into Lake Michigan. Said map also shows in heavy red lines the location and direction of the proposed conduits. Two branch lines are thus shown, beginning in the southern part of the city, one running north along the lake shore and the other further west, intercepting the existing sewers. These branch lines meet near the pumping station, from which a single larger conduit proceeds in a north and westerly direction to the north shore channel."

The city of Evanston is wholly within the Sanitary District of Chicago. It has a complete and efficient system of sewerage, amply sufficient to properly dispose of its sewage. The only reason for constructing the conduits along the lake front is to intercept the sewage of the city and convey it to the north shore channel of the sanitary district instead of allowing it to be deposited in Lake Michigan. It is stipulated that the depositing of the sewage by the city of Evanston into Lake Michigan pollutes the water, not only in that portion of the lake opposite the city of Evanston, but above and below as well. Substantially the whole of the sanitary district is dependent upon Lake Michigan for its water supply. The primary object in organizing the Sanitary District of Chicago was to dispose of the sewage without pollution of the waters of Lake Michigan. This purpose was accomplished, at the cost of many millions of dollars, by constructing the main channel of the sanitary district canal, with such adjuncts and ad-

ditions thereto as were necessary or proper to carry the sewage to said main channel. The north shore channel was constructed for the purpose of conveying the sewage of Evanston and other municipalities north of Chicago to the main channel of the sanitary district. The north shore channel is west of the principal part of the city of Evanston. Under present conditions there is no connection between the north shore channel and the sewerage system of the city of Evanston. Without such connection the north shore channel will fail to accomplish one of the important purposes of its construction. The construction of the intercepting sewers along the lake front, with the installation of a pumping station at the north end thereof, is the only practical method of collecting the sewage of Evanston and conveying it to the north shore channel. The improvement is a necessary part of the general purpose to avoid the pollution of the waters of Lake Michigan, and its construction will confer benefits on the whole people of the sanitary district of the same general character as those that result from the construction of the main channel of the sanitary district.

The bill in this case is filed on the theory that the trustees of the Sanitary District of Chicago have no power, under the law, to construct this improvement. The sanitary district is a municipal corporation organized to secure, preserve and promote the public health. (*People* v. *Nelson,* 133 Ill. 565.) It derives its powers from the legislature, and can exercise only those that have been expressly delegated to it and such as are necessarily implied. (*City of Chicago* v. *M. & M. Hotel Co.* 248 Ill. 264.) Statutes granting powers to municipal corporations are strictly construed, and any fair and reasonable doubt as to the existence of the power is resolved against the municipality claiming the right to exercise it. *Seeger* v. *Mueller,* 133 Ill. 86.

Section 7 of the Sanitary District act of 1889 is as follows: "The board of trustees of any sanitary district organized under this act shall have power to provide for the

drainage of such district by laying out, establishing, constructing and maintaining one or more main channels, drains, ditches and outlets for carrying off and disposing of the drainage (including the sewage) of such district, together with such adjuncts and additions thereto as may be necessary or proper to cause such channels or outlets to accomplish the end for which they are designed in a satisfactory manner."

Under the powers conferred by the above statute the main channel of the sanitary district was constructed. The constitutionality of the original Sanitary District act of 1889 came before this court at its June term, 1890. (*Wilson* v. *Sanitary District,* 133 Ill. 443.) One of the objections urged against the validity of the act was, that the work contemplated under the Sanitary District act of 1889 was a local improvement, which, under the constitution, could only be made by cities, towns and villages. The objection was not sustained. It was there held that the preservation of the public health is one of the paramount objects of government; that the State, in the exercise of its police power, could enact any appropriate legislation to accomplish this object, or it might delegate the power to cities, towns and villages or other municipal corporations which the legislature in its wisdom might see proper to authorize to better accomplish this paramount object. It was there said that the making of sewers and drains for the removal of garbage and filth, the boring of artesian wells, the construction of aqueducts for the purpose of procuring a supply of pure, fresh water, the drain of malarial swamps, and the erection of levees to prevent overflow, were among the well recognized means which might properly be employed to preserve and promote the public health. It was held that the power conferred upon the sanitary district to construct its main channels, drains, ditches and sewers, together with such adjuncts and additions as were necessary, was directly referable to the police power, which

was rightfully conferred upon the sanitary district by the legislature. It was there pointed out that while cities, towns and villages might exercise the police power within their limits, still there was no constitutional objection to an act of the legislature creating a sanitary district including within its boundaries more than one city and investing it with the powers of taxation for sanitary purposes co-extensive with the territory to be controlled. As a justification for legislation of this character it was pointed out in argument that it might often happen, in the exercise of such powers by cities, that they would have to exercise control over large rural districts adjacent thereto, as in case of large malarial swamps lying in the vicinity of cities, and in other instances where the air and water to be used by the city population would be poisoned and laden with germs of disease from causes existing beyond the city limits.

The mere circumstance that the sanitary district may exercise powers such as cities and villages may exercise within their respective corporate limits is not conclusive of the question whether those powers may have been delegated to the sanitary district. Necessarily, the powers of a sanitary district are either of the same general character or very similar to the powers exercised by cities and villages in respect to the particular subjects over which the sanitary districts are given control. The delegated powers of a sanitary district may be exercised in furtherance of the purposes of its creation within as well as without other municipalities that may be wholly or partly within the corporate limits of such district. It may not exercise all the powers belonging to a city or village within the district. It is not within the purposes of the sanitary district to install a system of sewers and connect the various houses of a city with the same. That belongs to the city or village and is strictly a local improvement. On the other hand, it is not the duty of a city like Evanston, which already has a complete and satisfactory system of sewerage installed, which

has presumably been paid for by special assessment, or otherwise, by the tax-payers of that city, to take upon itself the further burden of constructing adjuncts and additions to the sanitary district channels in order to dispose of its sewage in accordance with the general plans of the sanitary district. The sanitary district is expressly authorized to construct such "adjuncts" and "additions" as "may be necessary or proper to cause such channels or outlets to accomplish the end for which they are designed in a satisfactory manner." The words "adjuncts" and "additions," as used in the Sanitary District act, mean auxiliary channels to bring the sewage and drainage from the various sewers and systems of sewers of the municipalities in the limits of the sanitary district into the main channel of the sanitary district. It was not intended that the sanitary district should be charged with constructing and maintaining local improvements for the local drainage and sewerage of lands and property. (*City of Chicago* v. *Green,* 238 Ill. 258.) It would not be possible to lay down, in advance, a hard and fast rule by which to determine what is and what is not an "adjunct" or "addition," within the meaning of section 7 of the Sanitary District act. Each case must be determined by its own facts and surrounding conditions. In *City of Chicago* v. *Green* this court held that the construction of a brick sewer nine feet in diameter at its mouth and gradually decreasing was purely a local improvement and should be paid for by special assessment. The sewer there under consideration connected with the main canal of the sanitary district. But that case is distinguishable from the one at bar. There the sewer was a part of the drainage system of the city and was necessary for the proper local drainage of that portion of the city tributary thereto. In the case at bar, as we have already sought to show, the improvement is not at all necessary for the proper sewerage of Evanston and is not a necessary part of the system of local sewerage. It is true, the city of Evanston is inter-

ested in the supply of pure water, but the benefits the citizens of Evanston will receive in this regard differ only in degree, if at all, from the benefits diffused throughout the greater portion of the sanitary district. The object to be accomplished in the construction of this improvement has an important bearing in determining whether it is an adjunct or addition to the sanitary district such as the sanitary district is authorized to construct.

Section 2 of the act of 1903, passed for the purpose of extending the boundaries of the sanitary district, confers the same powers upon the sanitary district in respect to the territory taken in by the district as were conferred by section 7 of the original act. It appears to have been the intention of the legislature to confer the same powers upon the trustees of the sanitary district in respect to the north shore channel as were given them by the original act in regard to the main channel. The north shore channel is designed to convey the sewage from Evanston and other municipalities to the main channel. It cannot be made to serve its purpose until it is connected with the sewerage systems of the several municipalities intended to be served by it. Unless the sanitary district is authorized, under the law, to construct such adjuncts and additions as are proper and necessary to reach the sewerage systems of these several municipalities, the north shore channel will be practically worthless. If it were sought to compel the city of Evanston to construct these conduits and install the pumping station, its all-sufficient answer undoubtedly would be that the city had a complete and satisfactory system of sewerage and it was therefore unnecessary for the proper drainage of the city to construct said improvement.

There was no error in dismissing appellant's bill. The judgment of the Appellate Court for the First District will be affirmed.        *Judgment affirmed.*