van der molen v washington mutual, 04-0400

1-04-0400

PAUL VAN DER MOLEN, ) Appeal from the

) Circuit Court

Plaintiff-Appellant, ) of Cook County.

)

) No. 02 L 15105

)

WASHINGTON MUTUAL FINANCE, INC., )

WASHINGTON MUTUAL MORTGAGE SECURITIES )

CORPORATION., and WASHINGTON MUTUAL, F.A., ) Honorable

) Stuart A. Nudelman,

Defendants-Appellees. ) Judge Presiding.

PRESIDING JUSTICE REID delivered the opinion of the court:

Paul Van Der Molen brought this action to recover damages for violation of sections 4(2) and 6 of the Illinois Interest Act (815 ILCS 205/4(2) 6 (West 2002)).  He also sought damages for alleged violations of sections 2 and 10a(a) of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/2, 10a(a) (West 2002)).  Van Der Molen claims Washington Mutual Finance, Inc. (WMFI), Washington Mutual Mortgage Securities Corp. (WMMS), and Washington Mutual, FA (WMFA) (known collectively as Washington Mutual), charged illegal, concealed and misrepresented interest in his residential mortgage loan transaction.  He also claims Washington Mutual breached the contract between the parties for failure to complete a compromise of those claims as agreed between the parties prior to the filing of this action.  Counts I and II of the second amended complaint were dismissed based on defendants’ motion pursuant to section 2-619 of the Illinois Code of Civil Procedure (735 ILCS 5/2-619 (West 2002)).  Count III was dismissed pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2002)).  For the reasons that follow, we affirm.

BACKGROUND

In October 1999, Van Der Molen applied for a $750,000 loan to be secured by a mortgage on his personal residence.  That loan closed on December 23, 1999.  At the time of the application for the loan, Van Der Molen received and signed a receipt for a disclosure prepared by Washington Mutual.  According to Van Der Molen, the disclosure was prepared in blank.  He claims he received no further disclosure until the time of the closing.  Van Der Molen also claims that the loan application was made to an organization identified as Washington Mutual.  At the time of the loan, WMFI and WMMS each used the name “Washington Mutual.”  Both WMFI and WMMS were operating under the authority conferred upon them by the Illinois Secretary of State.  WMFI and WMMS have, since the filing of the original complaint, identified WMFA as an entity not subject to registry with the Illinois Secretary of State that was the entity ultimately disbursing the funds pursuant to the loan.  Van Der Molen claims he was not made aware that WMFA would disburse the funds until the closing date.  

Washington Mutual disputes Van Der Molen’s explanation of the facts chronicled thus far.  According to Washington Mutual, Van Der Molen received full disclosure of the fees that could be assessed against him in connection with this mortgage loan.  According to Washington Mutual, the fact that WMFA would be the lender for the loan was clearly evidenced on the mortgage.  

Van Der Molen refinanced his 1999 loan in February 2001.  He was charged and subsequently paid a prepayment penalty of $15,000 as part of the amount required to pay off that loan.  Van Der Molen filed the original complaint on November 27, 2002.  That complaint was amended on March 19, 2003, to add WMFA as a defendant.  On August 13, 2003, the trial court struck the amended complaint with leave to plead over.  On September 10, 2003, Van Der Molen filed the instant second amended complaint, which added a third count for “account stated/accord.”  In count I, Van Der Molen alleged that the imposition of the prepayment fee and the inclusion, after the second monthly payment, of a variable interest rate violated the regulations of the Illinois Interest Act.  In count II, Van Der Molen alleged that the prepayment fee and variable interest rate constituted a violation of the Consumer Fraud Act.  Finally in count III, Van Der Molen alleges that the defendants agreed to repay the prepayment fee but failed to adhere to that agreement.  

The trial court subsequently entertained the defendants’ motion to dismiss.  Based on section 2-619, Washington Mutual moved to dismiss, claiming state law regulating the imposition and disclosure of loan-related fees is expressly preempted by the Home Owners’ Loan Act (12 U.S.C. § 1461 
et seq.
 (2000)) and its implementing regulations (12 C.F.R. § 560.1 
et seq.
 (2000)).  Washington Mutual also moved to dismiss count III pursuant to section 2-615.  Washington Mutual argues that the second amended complaint fails to state a claim upon which relief might be granted and, in the alternative, that the claims were barred by the voluntary payment doctrine and waiver.  The trial court, in dismissing the second amended complaint, found that WMFA was the lender and that there was no claim stated as against WMMS and WMFI.  The trial court did not reach the question of whether Van Der Molen’s claims are precluded by Illinois’ voluntary payment doctrine or were waived.  The trial court originally intended to merely grant the section 2-615 motion without prejudice, but Van Der Molen inexplicably declined the opportunity to plead over.  The trial court changed the dismissal to one with prejudice, ostensibly at the request of the plaintiff.  

ANALYSIS

Preemption

Van Der Molen argues that the trial court erred in concluding that the State law had been preempted by federal law.  He argues that he received and signed a truth-in-lending statement in blank.  As a result, he argues no disclosure was made to him at all.  Van Der Molen argues that Washington Mutual stepped outside its shield in making a loan without the required substantial disclosures.  He argues they should not now be allowed to cloak itself in the protections of the regulations by which it previously failed to abide.  Van Der Molen argues that his case should stand on its own merits, even without examination of the implicit preservation of remedies.  He maintains the regulatory agency applicable to this case is the Office of Thrift Supervision (OTS).  That agency’s regulations expressly preserve state law remedies, including those for usury, where those remedies are equally applicable to all state-chartered entities.  He argues that the Illinois Interest Act makes illegal certain charges in connection with loans of money.  As these are uniformly applicable to lenders in Illinois and no lender is exempted by law from the Illinois Interest Act, the Act makes those charges illegal, even under preemptive OTS regulation.  

Washington Mutual responds that the trial court appropriately recognized that only WMFA is a proper defendant in this action.  Washington Mutual argues that it is immaterial that Van Der Molen asserts he was unsure of the identity of the entity with which he dealt, because the substance of his allegations arises from the issuance of the mortgage.  As a result, the allegations in the complaint can only be maintained against the lender on the actual mortgage.  Only the lender made or failed to make the requisite disclosures, changed the variable interest rate and imposed the prepayment fee.  Because it has been conclusively established by the trial court that WMFA is the lender, any allegation pointing at an entity other than WMFA must be disregarded.

Washington Mutual also responds that federal law absolutely preempts counts I and II of the second amended complaint.  Washington Mutual argues that Van Der Molen is attempting to fashion an exception to established precedent that mandates preemption.  Contrary to Van Der Molen’s assertions, nothing in the federal law or regulations prohibits the imposition of a prepayment fee where the interest rate exceeds 8% or the charging of an adjustable interest rate.  Washington Mutual points to the OTS regulations that provided that “[s]ubject to the terms of the loan contract, a Federal savings association may impose a fee for any prepayment of a loan.”  12 C.F.R. § 560.34 (2004).  Stripped of state regulations, Van Der Molen has no claim for the return of the interest or the prepayment fee.  Congress has expressly delegated to the OTS the authority to preempt state laws as they apply to the lending operations of federal savings associations.  Washington Mutual argues the broad preemption by the OTS applies here.  This preemption is not affected by the purported magnitude of the alleged violations claimed.  Washington Mutual argues it is similarly not affected by the mention of a purported violation of federal law.  Even if there were a violation of the Truth In Lending Act (15 U.S.C. § 1601 (2000)
 (TILA).
  Washington Mutual argues it would only be remediable under federal law.  This flies in the face of Van Der Molen’s alternative contention that federal law does not preclude his seeking a remedy under state law for the violation of 
TILA
.  Washington Mutual responds that this is an inaccurate characterization of Van Der Molen’s claim and overlooks the fact that there is a federal remedy that is in the purview of the OTS.  Washington Mutual claims that Van Der Molen has failed to avail himself of the federal remedies and no longer can because the statute of limitations has elapsed.  

As to claims of usury, Washington Mutual argues Van Der Molen has failed to raise them below, leading to waiver of the issue.  However, Washington Mutual also responds to the usury claim, arguing it is not applicable to these facts.  As with national banks, Congress and the OTS have created an exclusive federal remedy.  In so doing, the terms “usury” and “interest rate ceilings” have been generally preempted.  Washington Mutual believes Van Der Molen is attempting to preserve claims concerning a prepayment penalty and the timing of the first change in the adjustable interest rate, but he is actually attacking matters incidental to the rate.  By merely calling it “usury,” Van Der Molen has failed to take this claim from the scope of preemption.  Washington Mutual points out that the usury provisions of the Illinois Interest Act do not apply to mortgages, as the Act contains a recognized exception for mortgages.  815 ILCS 205/4(1) (West 2002).  

“Pursuant to the supremacy clause of the United States Constitution (U.S. Const., art. VI, cl.2), Congress has the authority to preempt state law.  
English v. General Electric Co.
, 496 U.S. 72, 78-79, 110 L. Ed. 2d 65, 74-75, 110 S. Ct. 2270, 2275 (1990).  In determining whether Congress has preempted state law, a reviewing court's task is to discern congressional intent.
  
English
, 496 U.S. at 78-79, 110 L. Ed. 2d at 74, 110 S. Ct. at 2275.  This analysis begins with the assumption that Congress did not intend to displace state law.  
Maryland v. Louisiana
, 451 U.S. 725, 746, 68 L. Ed. 2d 576, 595, 101 S. Ct. 2114, 2129 (1981).  The question of whether a federal enactment preempts a state statute is a question of law subject to 
de novo
 review.  
Cress v. Recreation Services, Inc.
, 341 Ill. App. 3d 149, 173, 795 N.E.2d 817 (2003).

Under the supremacy clause, a federal enactment can preempt a state statute in three circumstances. First, Congress can expressly state an intent to preempt state law (express preemption); second, intent to preempt may be reasonably inferred where federal regulation is so comprehensive that there is no room for supplementary state regulation or because the field is one in which the federal interest is so dominant that it displaces state regulation on the same subject (implied or field preemption); and third, state law is preempted to the extent that it actually conflicts with federal law (conflict preemption).  [Citations.]  Conflict preemption may occur where it is impossible for a private party to comply with both state and federal requirements or where the state regulation stands as an obstacle to fully achieving the federal objective.”  
Resource Technology Corp. v. Illinois Commerce Comm’n
, 354 Ill. App. 3d 895, 900-01 (2004), citing 
English
, 496 U.S. at 78-79, 110 L. Ed. 2d at 74-75, 110 S. Ct. at 2275; and 
Schneidewind v. ANR Pipeline Co.
, 485 U.S. 293, 300, 99 L. Ed. 2d 316, 325, 108 S. Ct. 1145, 1150 (1988).  

“ ‘Even when Congress has not completely displaced state regulation of a specific subject or object, state law is nullified to the extent that it actually conflicts with federal law. 
 
Kellerman
, 112 Ill. 2d at 438-39, 493 N.E.2d at 1049; 
Fidelity Federal Savings & Loan Ass'n v. de la Cuesta
, 458 U.S. 141, 153, 73 L. Ed. 2d 664, 675, 102 S. Ct. 3014, 3022 (1982).’ ”  
Cohen v. McDonald’s Corp.
, 347 Ill. App. 3d 627, 634 (2004), quoting 
Crain v. Lucent Technologies, Inc.
, 317 Ill. App. 3d 486, 492 (2000).  

We find the case of 
Moskowitz v. Washington Mutual, F.A.
, 329 Ill. App. 3d 144 (2002), instructive.  Under that case, based upon the supremacy clause (U.S. Const., art. VI, cl. 2), which authorizes federal preemption of state law, preemption occurs in either the case when the express language used in the federal materials displaces the state law or when Congress implements a comprehensive regulatory scheme.  
Moskowitz
, 329 Ill. App. 3d at 146-47, citing 
Sprietsma v. Mercury Marine
, 197 Ill. 2d 112, 117 (2001).   In the case of express language of preemption, courts focus on the plain wording of the statutory or regulatory language to find the best evidence of congressional intent.  
Moskowitz
 explains that the Home Owner’s Loan Act resulted in the creation of the OTS to issue regulation governing federal savings associations.  The OTS has primary responsibility to determine what is the best practice of local thrift institutions. In the regulations themselves, it specifically states that the “OTS hereby occupies the entire field of lending regulation for federal savings associations.”  12 C.F.R. § 560.2 (2004).  The OTS regulations make certain exceptions, but otherwise appear to completely preempt the entire field.  

The OTS has expressly preempted the entire field of state lending regulations with respect to federal thrifts such as Washington Mutual.  We find this in the subsection of the OTS regulation entitled “Occupation of field,” which reads, in relevant part:

“To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), 
OTS hereby occupies the entire field of lending regulation for federal savings associations
. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section or § 560.110 of this part. For purposes of this section, "state law" includes any state statute, regulation, ruling, order or judicial decision.”  (emphasis added.)  12 C.F.R. § 560.2 (2004).

We agree with Washington Mutual that, whether Van Der Molen is contesting the legitimacy of the prepayment fee or variable interest rate or the purported nondisclosure of required information in October 1999, the broad preemption identified in 
Moskowitz
 extends to the plaintiff’s claims.  Pursuant to the applicable federal regulations, “[s]ubject to the terms of the loan contract, a Federal savings association may impose a fee for any prepayment of a loan.”  12 C.F.R. §560.34 (2004).  Based upon 
Moskowitz
 and the applicable federal law, the trial court did not err in dismissing the plaintiff’s claim.  Prepayment penalties are among the nonexhaustive list of the types of state laws preempted because they are loan-related fees.  
Moskowitz
, 329 Ill. App. 3d at  147-48, quoting 
12 C.F.R. § 560.2(a) (2001).  Another of the plaintiff’s claims, regarding the adjustment of the interest rate, is similarly preempted (12 C.F.R. § 560.2(b)(4) (2004)), as is plaintiff’s state-based claim regarding the alleged failure to disclose both the nature of the variable interest rate and the existence of the prepayment penalty.  We find that, to the extent that Van Der Molen seeks to use state law as a remedy, he is barred.  Under section 560.2, the state law has been expressly preempted as far as state law attempts to impose requirements for “ ‘[d]isclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts or other credit-related documents.’ ”  
Moskowitz
, 329 Ill. App. 3d at 148, quoting 
12 C.F.R. §560.2(b)(9) (2001).  We need not address further the plaintiff’s fruitless attempts to evade the fact that there were, at one point, remedies for his complaints under the federal systems.  Having failed to avail himself of those federal actions when they would have been timely, there was nothing for the trial court to do but dismiss the action in the manner done.  We will not disturb that judgment now. 

Breach of Contract: Dismissal by Section 2-615

Van Der Molen next argues that count III of the second amended complaint states a cause of action for breach of contract.  He argues he has shown the factual existence of a dispute.  He claims there were discussions that resulted in a promise to refund the prepayment penalty and settle the dispute.  The offer was accepted and an agreement was reached.  However, Van Der Molen claims there was a subsequent breach.  He also argues that the pleading of a dispute so resolved is sufficient even if the value of the settlement is doubtful.  Van Der Molen argues that, when the defendants raised this issue before the trial court, the characterization of payment of variable interest and the prepayment penalty as voluntary and a waiver or, at best, a payment made under a mistaken belief as to the law, were prematurely raised defenses.  He argues that, outside of tax cases, the voluntary payment doctrine is an affirmative defense, as is waiver.  Van Der Molen argues that Washington Mutual has failed to present any affirmative facts to demonstrate what he did or did not do.

In addition to the defenses being improperly raised, Van Der Molen argues there are substantive reasons against their application.  
First, in Van Der Molen’s brief, he argues that a tentative draft of section 6 of the Restatement (Third) of Restitution and Unjust Enrichment has done away with the distinction between a mistake of fact and a mistake of law.  Restatement (Third) of Restitution and Unjust Enrichment §6 (T. D. No. 1, 2001).  We note that, though Van Der Molen cites it as if it were a full and formal part of the Restatement of Restitution, it is not.  In fact, this very document states plainly that “[t]his Draft is being circulated for discussion and comment.  The Council’s consideration of the material herein has not been completed.  As of the date of its publication the views expressed in the Draft have not been considered by the members of the American Law Institute, and therefore they do not represent the position of the Institute on any of the issues with which the Draft deals.”  Restatement (Third) of Restitution and Unjust Enrichment §6, n.a, (T. D. No. 1, 2001).  Based upon his reading of the tentative draft, Van Der Molen urges this Court to take the position that the recoupment of payments is allowed when they are made under either kind of mistaken belief and that belief caused the action or inaction on the part of the person receiving the payment.  Van Der Molen also argues that the payments here were anything but voluntary, such that there is no way the voluntary payment could apply.
  As pleaded, Van Der Molen discovered that his interest rate began to vary the month after closing.  He then arranged to refinance, which led to the prepayment penalty.  He had to pay things off in order to have clear title for the new mortgage to take effect.  He did so believing that any overpayment would be returned to him.  He adds that the Illinois Interest Act provides a remedy against a person who receives unlawful interest.  

Van Der Molen further argues that his Consumer Fraud Act claim (count II) states a valid cause of action.  He claims he has pled the representations that were made, when they were made and to whom they were made.  

Washington Mutual responds that there cannot be breach of contract because there was no consideration, an essential element whether in the original contract stage or a modification.  Anything done by Washington Mutual should be considered a gratuitous promise that would be unenforceable.  Apparently recognizing the weakness in the lack of consideration, Van Der Molen claims a breach of “an offer to settle the dispute.”  There is, however, no reference to the purported “settlement” in the second amended complaint.  This failure to plead a necessary element of a claim is a proper ground for dismissal.

Washington Mutual also responds that the trial court was correct when it dismissed Van Der Molen’s claims pursuant to section 2-615.  Washington Mutual argues that the claims are barred by the voluntary payment doctrine and waiver and because it fails to state a claim upon which relief can be granted.  Under the voluntary payment doctrine, money voluntarily paid under a claim of right, with knowledge of the facts by the person making the payment, may not be recovered by the payor solely because the claim was illegal.  
Smith v. Prime Cable of Chicago
, 276 Ill. App. 3d 843, 847 (1995).  Washington Mutual argues that these payments were neither disputed nor involuntary and the failure to so plead is a reason the dismissal was appropriate.  Van Der Molen needed to show that the claim asserted was unlawful 
and
 that the payment was involuntary and/or the result of some form of compulsion.  Here the closing documents dispute Van Der Molen’s claims, specifically the adjustable rate rider.  That rider, duly executed by Van Der Molen, controls over any allegations to the contrary.  Washington Mutual argues that Van Der Molen could have avoided the application of the voluntary payment doctrine by merely paying under protest and resorting to litigation if no response to the protest was forthcoming.  Yet, there was no allegation in the second amended complaint that Van Der Molen actually disputed either the interest rate or the prepayment penalty at the closing or at any point until after the loan was refinanced.  He also may not rely on any assertion that he did not read the documentation or that others allegedly made oral misrepresentations to him.  In the trial court, Van Der Molen raised the specter of an anticipatory threat of foreclosure if he failed to proceed with the mortgage.  Washington Mutual argues that, even if such claim were properly raised, the anticipatory threat of foreclosure is not sufficient to establish compulsion or duress.  Washington Mutual also argues that Van Der Molen’s failure to dispute the terms or fees of the mortgage prior to payment bars any suit concerning those terms or fees.  

In ruling, the trial court stated the following:

“[I] am respectfully going to dismiss count 3 
without
 prejudice, pursuant to 2-615.  It is vague.  I don’t believe that the defendant is given sufficient information to be able to adequately respond to the allegations, in effect, in the complaints, how count 3 is drafted at the present time.  I will certainly allow you to redraft that, and I’ll give you 28 days to draft that.  ***  That will be my ruling.” (Emphasis added.)

When asked how much time would be necessary to redraft count III of the complaint, counsel inexplicably declined to do so, instead electing to “stand on it.”  The section 2-615 motion to dismiss was, therefore, granted with prejudice at Van Der Molen’s behest in order for Van Der Molen to be able to appeal the dismissal.

“To prove the breach of a contract, a party must establish the following elements: ‘(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff.’  
Henderson-Smith & Associates, Inc. v. Nahamani Family Service Center, Inc.
, 323 Ill. App. 3d 15, 27, 752 N.E.2d 33, 43 (2001).  Included in the formation of a valid contract are offer and acceptance, consideration, and definite and certain terms.  See 
Village of South Elgin v. Waste Management of Illinois, Inc.
, 348 Ill. App. 3d 929, 940, 810 N.E.2d 658, 669 (2004).”  
Zirp-Burnham, LLC v. El Terrell Associates, Inc.
, 1-04-0124 Slip op. at 14 (February 28, 2005).  “Under Illinois law, a valid modification of a contract must satisfy all the criteria essential for a valid original contract, including offer, acceptance, and consideration.”  
Schwinder v. Austin Bank of Chicago
, 348 Ill. App. 3d 461, 468-69 (2004), citing 
Scutt v. La Salle County Board
, 97 Ill. App. 3d 181, 185 (1981), and 
Gorman Publishing Co. v. Stillman
, 516 F. Supp. 98, 108 (N.D. Ill. 1980) (modification of a contract is only enforceable where ordinary standards of contract law are satisfied).  

The complaint was presumably intended to be dismissed without prejudice to give him the opportunity to amend and solve the problem of lack of consideration.  Count III of the second amended complaint does not appear to demonstrate consideration for the alleged promise to refund the prepayment penalty.  The complaint identifies Judith Lundquist as the person making the alleged promise and Ken Jeffus as the person unilaterally revoking said alleged promise, but it does not plead any consideration.  Whether the complaint could again be amended so as to demonstrate valid consideration will never be known, but the trial court was correct in its attempt to give Van Der Molen the opportunity to try. It was Van Der Molen who refused to exercise the option the trial court offered.  We find no basis, under these peculiar facts, to save Van Der Molen from the consequences of his own actions.  In ruling on the section 2-615 motion to dismiss, the trial court did not reach the question of the applicability of the voluntary payment doctrine or of waiver for failure to sue for the alleged fraud he now claims.  Because the lack of consideration is fatal to a claim for breach of contract, those other issues would only arise in a secondary capacity.  We need not reach them at this juncture.  Those issues are not central to the fact that Van Der Molen failed to avail himself the opportunity provided by the trial court to amend his complaint.

CONCLUSION

In light of the foregoing, the dismissal of the second amended complaint pursuant to sections 2-615 and 2-619 of the Illinois Code of Civil Procedure is affirmed.

Affirmed.

Greiman, J. and Theis, J., concur.