FOURTH DIVISION
JUNE 30, 2006

No. 1-05-1929

| | | |
|---|---|---|
| THE VILLAGE OF FRANKFORT, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| ILLINOIS ENVIRONMENTAL PROTECTION | ) | |
| AGENCY, THE VILLAGE OF RICHTON PARK, | ) | |
| and THE METROPOLITAN WATER RECLAMATION | ) | |
| DISTRICT OF GREATER CHICAGO, | ) | Honorable |
| | ) | Anthony L. Young, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, the Village of Frankfort, Illinois (Frankfort), appeals from an order of the circuit court of Cook County dismissing its complaint against defendants, the Illinois Environmental Protection Agency (IEPA), the Village of Richton Park (Richton Park), and the Metropolitan Water Reclamation District of Greater Chicago (MWRD), for failure to state a cause of action pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 2-615 (West 2002)), in connection with the denial of Frankfort's application to extend its sewage treatment and transportation area into an unincorporated area of 853 acres located in Rich Township, Cook County (the Subject Area). On appeal, Frankfort contends that the MWRD does not have exclusive jurisdiction to provide sewage treatment service within its boundaries and therefore the trial court erred in dismissing Frankfort's complaint. For the following reasons, we affirm the judgment of the trial court.

BACKGROUND

A. The Parties

Plaintiff, the Village of Frankfort, is an Illinois municipal corporation located in both Will and Cook Counties. Defendant, Village of Richton Park, is an Illinois municipal corporation located in Cook County, Illinois. Defendant Illinois Environmental Protection Agency, is, *inter alia*, designated to prevent water pollution in the state for all purposes of the federal Water Pollution Control Act Amendments of 1972, as amended (33 U.S.C. § 1251 *et seq*. (2000)) 415 ILCS 5/4(d)(1) (West 2002)). Defendant, Metropolitan Water Reclamation District of Greater Chicago, is authorized by the Metropolitan Water Reclamation District Act (MWRD Act) (70 ILCS 2605/7aa, 7e (West 2002)) to control, prevent and abate the pollution of any waters, and to regulate the connection of sewage treatment systems within the District. The boundaries of the MWRD have been enlarged by statute over 100 times since 1913. 70 ILCS 2605/90 through 288 (West 2002).

The Subject Area, located in Rich Township, Cook County, is an 853- acre portion of approximately 1,470 unincorporated acres that comprise the southern third of section 30 and all of section 31 of Rich Township. Approximately 140 acres of the Subject Area are located within the corporate limits of Frankfort.

B. The Sewage Treatment and Transportation Process

The process of providing sanitary sewage treatment and transportation is statutory and regulated by state agencies. The IEPA designates Facility Planning Areas (FPAs), geographic areas for the planning, treatment or transport of liquid domestic wastewater and its residual solids. FPAs are included within a Water Quality Management (WQM) plan adopted by the IEPA.

The Northeastern Illinois Planning Commission (NIPC) is an agency created by statute to consider applications to change FPA boundaries within the six Illinois counties of Cook, Will, DuPage, Kane and Lake, and to make nonbinding recommendations on such applications to the IEPA. 70 ILCS 1705/1 *et seq*. (West 2002). The NIPC devises WQM plans according to criteria set forth by the IEPA and publishes a procedure manual for the WQM amendment process. The IEPA makes final decisions regarding WQM and FPA amendments. Part 351 of the Illinois Administrative Code contains the "Procedures and Requirements for Conflict Resolution in Revising Water Quality Management Plans." 35 Ill. Adm. Code section 351.103 as amended by 6 Ill. Reg. 2597 (eff. March 1, 1982). The rules contained in that section apply to amendments to FPA boundaries. 35 Ill. Adm. Code section 351.502, as amended by 6 Ill. Reg 2597 (eff. March 1, 1982). The rules also apply to revisions of WQM plans, unless otherwise determined by the Director of the IEPA. 35 Ill. Adm. Code section 351.103(b)(3) as amended by 6 Ill. Reg. 2597 (eff. March 1, 1982).

Frankfort is a Designated Management Agency (DMA) and provides sewage services within its own designated FPA. Frankfort's waste water treatment facility for its FPA is located in the Hickory Creek Watershed and serves an area primarily within the Hickory Creek watershed. An eight-inch sanitary sewer located in Frankfort's FPA is adjacent to the southern third of section 30 of Rich Township.

### C. Frankfort's Application

On December 16, 2002, Richton Park filed an application with the NIPC seeking to transfer approximately 1,470 acres, including the 853-acre Subject Area, into the FPA of the MWRD.

On January 7, 2003, Frankfort filed a written objection to Richton Park's application. Frankfort complained that although Richton Park sought to transfer the Subject Area into its own FPA, Richton Park had no FPA of its own at that time. Therefore, Frankfort argues, Richton Park's application violated the regulatory provisions regarding FPA boundaries set forth in Title 35, part 351.502 of the Administrative Code, as well as the NIPC Manual that sets forth prerequisite criteria for WQM.

On February 7, 2003, Frankfort filed an application with the NIPC requesting an amendment to its own FPA to provide sanitary sewage treatment and services to the Subject Area. In addition, Frankfort sought an injunction against Richton Park to prevent construction of any sewer lines until following a full, fair and complete determination on Frankfort's application.

On February 13, 2003, the NIPC recommended against approval of Richton Park's application based on its finding that: (1) the proposal did not meet the requirement that the amendment should not reduce the effectiveness of the water quality improvement strategy contained in the original WQM plan; and (2) Richton Park's application did not have substantial support by the municipalities within the affected area and the proposed change adversely affected adjoining units of government. The NIPC Water Resource Committee voted to defer further consideration of Richton Park's application in order to allow review and comparison of Frankfort's application with Richton Park's application.

On March 6, 2003, the MWRD adopted a resolution supporting Richton Park's application. On March 12, 2003, the MWRD sent the resolution to the NIPC along with a cover letter stating that the MWRD supported Richton Park's application "into the MWRD FPA," On March 13, 2003, the NIPC Water Resource Committee voted to support Richton Park's

application. On March 25, 2003, the NIPC issued a recommendation to support Richton Park's application.

On May 13, 2003, the IEPA issued its decision accepting the NIPC's recommendation for and approving Richton Park's request to transfer 1,150 acres from a nonfacility region into the MWRD FPA.

On June 4, 2003, the NIPC returned Frankfort's application and the application fee along with a letter stating that the NIPC was "without jurisdiction to consider the FPA Application submitted by the Village of Frankfort." The letter explained that in exercising "its due diligence," the NIPC learned that the Subject Area had been annexed to the MWRD in 1998 by Public Act 90-780 (Pub. Act 90-780, §5, eff. August 14, 1998). 70 ILCS 2605/273 (West 1998).

On June 16, 2003, Frankfort filed an appeal with the IEPA. No action had been taken by the IEPA at the time of the appeal to this court. On December 23, 2003, Frankfort sent a letter to the IEPA requesting that Richton Park not be granted a permit to install a sewer main until the IEPA had ruled on Frankfort's petition. On December 30, 2003, the IEPA responded that the permit had already been issued.

D. Frankfort's Lawsuit

On February 4, 2004, Frankfort filed an action against Richton Park and the IEPA. Frankfort later amended its complaint to add the MWRD as a necessary party. On June 9, 2004, Frankfort filed its second amended complaint in six counts against defendants. In counts I, II, III and IV, Frankfort demanded a writ of mandamus to compel defendant IEPA to conduct a review and fair hearing of Frankfort's application to the NIPC; conduct a hearing on Frankfort's IEPA appeal; revoke its acceptance of Richton Park's application and revoke any permits issued by the IEPA based upon the IEPA's granting of Richton Park's application. Frankfort further

demanded a *writ of certiorari* to obtain limited review of the decision on the amendment of the FPA to grant Richton Park's application.

Frankfort further requested preliminary and permanent injunctions against Richton Park to prevent the construction of sewer lines within the Subject Area, and sought a declaratory judgment that the area within the boundaries of the MWRD area into the exclusive province of the MWRD for obtaining a FPA.

On November 12, 2004, the trial court denied Frankfort's motion for a preliminary injunction. All three defendants filed a motion to dismiss Frankfort's second amended complaint for failure to state a claim. The IEPA argued that the MWRD had exclusive jurisdiction to provide sewage treatment within its boundaries and therefore Frankfort's application was properly rejected.

At the same time, the MWRD filed its own motion to dismiss, stating that its role was only "advisory." Therein, the MWRD stated:

> "At issue is the Illinois [FPA] which was designed to provide wastewater treatment through out the area in an organized fashion. The MWRD operates sewage treatment facilities through-out the greater metropolitan area. Often local municipalities are interested in constructing their own facilities. Any such request by law is handled by the [IEPA]. The IEPA approves or disapproves requests and border disputes. IEPA is the agency with the expertise and is statutorily authorized to do so. The [NIPC] was created by statute and has a contract with the IEPA to review and to make recommendations as to any such application * * *. The

IEPA makes the final determination on a facility planning applica-
tion, and its decision is subject only to administrative review. The
MWRD has no authority in the matter, but in this instance voices
an opinion in favor of the Village of Richton Park's application."

On May 3, 2005, the trial court denied defendants' motions to dismiss.

On May 20, 2005, the IEPA and the MWRD entered into a stipulation that provided in part:

"The General Assembly extended the MWRD's corporate
boundaries to include the additional territory involved in the
present matter ('Subject Area'), pursuant to its authority and the
provisions of the MWRD Act. Upon the General Assembly's
action to extend the MWRD's corporate boundaries to include the
Subject Area, the Northeastern Illinois Planning Commission and
the IEPA ceased to have a role in determining what entity has the
right to provide sewer service within the Subject Area, through the
[FPA] process.

* * *

Once the Subject Area was added to the MWRD's
corporate boundaries by the General Assembly, MWRD had and
continues to have exclusive jurisdiction and authority to decide
who provides sewer service within that area. The IEPA has
regulatory responsibility for issuing permits authorizing the
construction of sewers within the Subject Area. The MWRD's

> boundaries were extended to include the Subject Area by
>
> legislative act, as authorized by Section 1 of the MWRD Act, and
>
> did not require an FPA amendment pursuant to 35 Ill. Adm. Code
>
> Part 351."

Based on the above stipulation, the trial court entered an agreed order between the IEPA and the MWRD that provided that there was no inconsistency or conflict between the jurisdiction or authority of the MWRD and the IEPA regarding providing sewage treatment service within the MWRD's corporate limits. The trial court concluded that the MWRD had the exclusive jurisdiction to provide sewer service within its boundaries and dismissed Frankfort's complaint for failure to state a cause of action. This timely appeal followed.

OPINION

On appeal, Frankfort argues that there is no provision within the MWRD Act that grants the MWRD exclusive jurisdiction to provide sewage treatment within its boundaries, and therefore the trial court erred in dismissing Frankfort's complaint. We review an order dismissing a cause for failure to state a claim *de novo*. People *ex rel*. Sklodowski v. State, 182 Ill. 2d 220, 228, 695 N.E.2d 374 (1998).

Our analysis of Frankfort's appeal is aided by an examination of the history of the MWRD. Originally established by the Illinois General Assembly in 1889, the "Sanitary District" was empowered to treat sewage within its stated boundaries in Chicago. See 1889 Ill. Laws 125 (§7), (effective July 1, 1889); 70 ILCS 2605/1 (West 2002). Section 7 of the MWRD Act expressly grants to the MWRD the following exclusive powers: (1) to provide for the drainage of the district of surface water and sewage; (2) establish treatment plants and works; (3) prevent pollution of waters (section 7a); (4) prevent pollution in the sewerage system (section 7a);

(5) storm water management in all of Cook County (section 7h); and (6) regulation of construc-tion and installation of municipal sewage systems discharging to the MWRD (sections 7(b) and 7(f)). The MWRD is further authorized to "pass all necessary ordinances, orders, rules, resolutions and regulations for the proper management and conduct of the business of the board of commissioners and the corporation and for carrying into effect the object for which the sanitary district is formed." 70 ILCS 2605/4 (West 2002). The corporate limits of the District "may be extended [by legislative action] to include any areas of contiguous territory within Cook County wherein the construction, maintenance and operation of sewers and sewage treatment plants will conduce to the preservation of the public health." 70 ILCS 2605/1 (West 2002).

Frankfort contends that despite the powers granted by the MWRD Act, cited above, case law supports the proposition that municipalities within the District are permitted to construct their own sewers. Frankfort relies on City of Chicago v. Green, 238 Ill. 258, 87 N.E. 417 (1909); City of Berwyn v. Berglund, 255 Ill. 498, 99 N.E. 705 (1912); and Judge v. Bergman, 258 Ill. 246, 101 N.E. 574 (1913), arguing that these cases hold that the MWRD does not have the exclusive authority to provide sewage treatment for the area within its corporate limits. Frankfort argues that the IEPA mistakenly cited these three cases for the opposite proposition and that the trial court improperly relied on them as providing that the MWRD has the exclusive authority to provide sewage treatment within its boundaries.

In Green, the plaintiff, the City of Chicago, instituted proceedings for a special sewer assessment to construct a sewer improvement within Kedzie Avenue, Chicago, across the right-of-way and under the bottom of the Illinois and Michigan Canal by means of a siphon. The canal commissioners adopted a resolution granting the application of the City of Chicago, after concluding that the area was adjacent to the "Sanitary District of Chicago" and was necessary for

proper local drainage.  <u>Green</u>, 238 Ill. At 262.   The Sanitary District objected, arguing that because the proposed sewer was "'adjunct,'" or "'in addition to'" the main channel of the District, the District was responsible for constructing the improvement and was authorized to levy and collect the assessment for construction.  <u>Green</u>, 238 Ill. at 263.  Our supreme court held that the District was intended to empower the municipalities within its limits to take charge of making their own local improvements for sewage and drainage and this sewer was purely a local improvement and should be constructed and paid for by special assessment.  <u>Green</u>, 238 Ill. at 277-78.

<u>Green</u> is distinguishable from the present case. Unlike the Chicago street at issue in <u>Green</u>,  here, the Subject Area was not within Frankfort's jurisdiction and was therefore not a local improvement.

In <u>Berwyn</u>, the plaintiff objected to the petition of the City of Berwyn to levy a special assessment for the cost of constructing a sewer.  The record revealed that the contemplated sewer extended beyond the limits of Berwyn into Cicero.  The Cicero board of trustees passed an ordinance granting Berwyn permission and authority to construct, operate, control and maintain the sewer.  The defendant argued that because the land upon which Berwyn planned to construct the proposed sewer was outside the Berwyn city limits and vested by law in the Sanitary District, Berwyn could not levy the assessment and construct the sewer.  The trial court dismissed Berwyn's petition, holding that the Cicero ordinance was a mere revocable license and not a grant of any right or easement in the street and, therefore, Berwyn had not acquired the land necessary for the proposed improvement. <u>Berwyn</u>,  255 Ill. at 499.

On appeal, our supreme court reversed.  The court acknowledged that while a license is distinct from a grant of exclusive possession, towns are vested with control of their streets and

are authorized to make or permit to be made any use not inconsistent with the purpose for which they were dedicated and therefore may permit another municipal corporation to make and maintain a sewer in their streets. Berwyn, 255 Ill. at 502-03.

Berwyn does not support Frankfort's position that an outside entity can divert sewage treatment from the MWRD to its own disposal system. Berwyn confirmed the right of municipalities located within the Sanitary District to construct local sewers that operate to treat and transport sewage via the Sanitary District system.

Judge addressed a similar, but inverted, citizen complaint to enjoin the trustees of the Sanitary District form constructing and maintaining a proposed system of conduits and sewers and a pumping station in the City of Evanston and from expending Sanitary District funds for such improvements. The plaintiff argued that the proposed improvements were "purely local," designed to supplement the local sewer system of Evanston and should be constructed and paid for by Evanston and by special assessment. Judge, 258 Ill. at 247. The trial court dismissed the complaint and this court affirmed, allowing appeal to the Illinois Supreme Court. Judge, 258 Ill. at 247-48

Our supreme court found that Evanston is wholly within the Sanitary District and that the purpose of the improvement was consistent with the primary objective of the Sanitary District: "to dispose of the sewage without pollution of the waters of Lake Michigan." Judge, 258 Ill. at 250. Judge had argued that the trustees had no power to construct this improvement, but the supreme court held that "the preservation of the public health is one of the paramount objects of government," and the legislature, in the exercise of its police power, could enact any appropriate legislation to accomplish this object, or to delegate this power to cities, towns, villages and other

municipal corporations which may better accomplish this "paramount object." Judge, 258 Ill. at 252.

Judge follows Green in interpreting the "Sanitary District Act" (MWRD Act) as giving the District the exclusive authority to provide sewage treatment for the areas within its corporate District boundaries by constructing a main channel to provide a common outlet for individual sewers constructed by the municipalities. Both cases held that the municipalities retained the authority to construct sewers and provide service to their inhabitants, but that the District was responsible for the ultimate treatment and disposal of the wastewater; such treatment would be financed by the District's taxing authority. Green, 238 Ill. at 264; Judge, 258 Ill. at 253.

In this case, Frankfort sought to amend its FPA to provide sewage treatment and transportation for the Subject Area, separate from the MWRD system. When the IEPA discovered that the Subject Area was within the boundaries of the MWRD, the IEPA properly declined to consider Frankfort's request and returned Frankfort's application fee. The FPA amendment process is used to determine what entity will be the DMA for wastewater treatment for a given area. As the DMA of the Subject Area since 1998, the MWRD is authorized to provide overall sewage treatment and transportation for the Subject Area, even though other municipalities may construct their own sewers should their corporate boundaries fall within the Subject Area. The FPA process, therefore, did not apply to the construction of sewer lines within the Subject Area. While the Subject Area is unincorporated, it lies within Cook County, and within the MWRD. As the IEPA and the MWRD stipulated that the MWRD is authorized to determine what entity would provide sewage treatment to the Subject Area, we find no error in the determination of the MWRD to return Frankfort's application as inappropriate for consideration. The cases cited

above do, in fact, support the position of the defendants that the MWRD has the exclusive authority to provide sewage treatment and transportation within its legislated District.

Frankfort further contends that the IEPA's "deferral" to the MWRD to determine its boundaries violates the Clean Water Act (33 U.S.C. §1313(e) (2000)), the IEPA Act and the supremacy clause of the United States Constitution. Section 1313(e) of the Clean Water Act of 1977 (FCWA) (33 U.S.C. §1313(e)(2000)) requires each state to have a continuing, unified planning process, approved by the United States Environmental Protection Agency (USEPA), resulting in a WQM plan. Frankfort argues that the Environmental Protection Act (EPA Act) (415 ILCS 5/4 *et seq*. (West 2000)) that establishes the IEPA as the pollution control agency for the State for all purposes of the FCWA does not mention the MWRD. Frankfort argues that there is nothing in the EPA Act that limits the IEPA's powers to determine FPA boundaries within the MWRD, nor is there any provision that vests the MWRD with any power concerning FPAs. Frankfort asserts that there is no unified state-wide system in place if the IEPA must defer to the "political boundaries and decisions of the MWRD." Frankfort concludes that if the MWRD Act limits the power of the IEPA to establish FPA boundaries, it is a violation of the supremacy clause because the effect is that EPA Act has priority over the MWRD Act. Frankfort argues that the EPA Act is based on the USEPA Act and under the Constitution, "federal laws shall be the supreme law of the land."

Frankfort mischaracterizes the statutory interaction of the IEPA and the MWRD. The IEPA does not "blindly defer" to the MWRD in recognizing an FPA. The legislature, responsible for creating both the IEPA and the MWRD, must implement the "unified planning process" for clean water. The IEPA sets forth requirements for pollution control and the MWRD ensures compliance with these regulations in the treatment and transportation of sewage within

its boundaries. Courts presume that the legislature intended that two or more statutes relating to the same subject be read harmoniously so that no provisions are rendered inoperative. Knolls Condominium Ass'n. v. Harms, 202 Ill. 2d 450, 459 (2002). Within the stipulation entered into between the IEPA and the MWRD, the MWRD has the authority to regulate, via permit, entities seeking to connect to the MWRD, while the IEPA will issue permits if the applicant can demonstrate that its collection and transportation of wastewater will not cause, threaten or allow water pollution in violation of the EPA Act. The IEPA and the MWRD, in fact, work in tandem.

Frankfort's further argument that defendants' interpretation of the MWRD Act conflicts with the FCWA, thus rendering the MWRD Act inoperative under the supremacy clause, is erroneous. The supremacy clause makes federal law "the supreme Law of the Land." U.S. Const. Art. VI, cl. 2. As such, federal statutes and regulations properly enacted and promulgated "'can nullify conflicting state or local actions.'" National Home Equity Mortgage Ass'n v. Face, 239 F.3d 633, 637 (4th Cir. 2001), (quoting Worm v. American Cyanamid Co., 970 F.2d 1301, 1304-05 (4th Cir. 1992). State law is preempted under the supremacy clause in three circum-stances: (1) when Congress has clearly expressed an intention to do so ("express preemption"); (2) when Congress has clearly intended, by legislating comprehensively, to occupy an entire field of regulation ("field preemption"); and (3) when a state law conflicts with federal law ("conflict preemption"). Van Der Molen v. Washington Mutual Finance, Inc., 359 Ill. App. 3d 813, 819, 835 N.E.2d 61 (2005). In reviewing a claim of preemption under the supremacy clause, courts must presume that Congress did not intend to displace state law. Resource Technology Corp. v. Illinois Commerce Comm'n., 354 Ill. App. 3d 895, 900 (2004).

Frankfort has not specified which of the three types of preemption allegedly applies to the present case. The IEPA argues that because Frankfort did not describe any express

preemption, either field preemption or conflict preemption must be assumed. Implied field preemption arises only when the federal regulation is so pervasive in a particular area that there is no room left for the state to regulate on the same subject. Implied field preemption, however, does not apply here, as courts have held that the "Clean Water Act does not occupy the entire field of water pollution control and abatement." Valstad v. Cipriano, 357 Ill. App. 3d 905, 923 (2005). Finally, the facts of the present case do not support an allegation of conflict preemption, as there is no such conflict between the MWRD Act and the FCWA. The decision of the legislature to allow both the MWRD and the IEPA to participate in the state-wide process of sewage management does not fall under any of the three circumstances under which the supremacy clause is violated. The process of involving both the IEPA and the MWRD in the goal of clean water does not create any dis-unity in violation of federal law.

Under the specific facts and circumstances of this case, Frankfort has failed to allege any facts showing that the MWRD does not have the exclusive authority to provide sewage treatment facilities for the Subject Area, which falls within the legislative boundaries of the MWRD. The NIPC properly returned Frankfort's application and paid fee once the Subject Area was found to lie within the MWRD District. The stipulation between the MWRD and the IEPA clarified that the NIPC and the IEPA have no role in determining what entity has the right to provide sewer services to the Subject Area because it was annexed to the MWRD by law in 1998. We therefore conclude that the trial court properly dismissed Frankfort's second amended complaint for failure to state a cause of action pursuant to section 2-615 of the Code of Civil Procedure.

Affirmed.

GREIMAN, J., and MURPHY, J., concur.